JOHNSTON, trustee, *v.* CONEY *et al.,* and *vice versa.*

1. The plaintiff not only failed to prove the alleged agreement under which he claimed the equitable title to the insurance policy, the proceeds of which he sought to recover, but also failed to establish any lien thereon which he could successfully assert as against the defendants.

2. The action being one by a trustee in bankruptcy of a partnership against an administrator and others claiming under his intestate, a member of the partnership was incompetent to testify concerning transactions had by him with such intestate respecting the subject-matter of the suit.

3. Neither admissions nor promises made to one by another, acting in an individual capacity before he became the guardian of minor children, can properly be held to be binding upon them, since the rights of the wards could not be affected by the conduct of any one who was not at the time their legal representative.

4. While the trial judge may have committed error in some of his rulings touching the admissibility of evidence, the plaintiff below was not prejudiced thereby; as, had the court in each instance ruled in his favor, a finding against him would nevertheless have been the only logical result of the trial.

5. That the court directed a verdict against the plaintiff not only as to those of the defendants who filed an answer to the suit, but also in favor of the defendants who did not, affords no reason, under the peculiar facts of this case, why there should be a reversal of the judgment rendered.

Argued June 24, — Decided July 19, 1904.

Equitable petition.     Before Judge Roberts.     Pulaski superior court.     August 13, 1903.

*Davis & Turner* and *Hardeman & Jones*, for plaintiff, cited, as to equity of creditor paying premiums and holding policy, Civil Code, § 3159; *Ga. R.* 59/862; 76/272; 98/534; 115/932; 2 Am. & Eng. Enc. L. (2d ed.) 1015, 1056, 1057; 19 Id. 93, 94; 2 May on Ins. § 395; 161 Mass. 321; 5 Rich. Eq. 274; 111 Ind. 578 (12 N. E. 518); 144 Pa. St. 223 (22 Atl. 865); 52 N. J. L. 240; 68 N. Y. 625; 59 Minn. 39; 17 Ves. 253; 29 Beav. 79; 2 Ch. Cas. 26; 10 Ves. 360; 1 P. Wms. 607.

*Hall & Wimberly, T. C. Taylor,* and *M. S. Means,* for defendants, cited Civil Code, § 3159; Bisp. Eq. (5th ed.) §§ 78, 81, p. 136; 15 Am. & Eng. Enc. L. (2d ed.) 1149–50; 88 *Ga.* 191; 115 *Ga.* 929.

EVANS, J.   The original petition filed by the plaintiff in this case alleged, substantially, that G. D. Mashburn & Company were creditors of A. J. Doster, and to secure his indebtedness that firm took out and held a policy of insurance in the Fidelity Insurance Company of Philadelphia, on the life of their debtor, Doster, for the sum of $2,000, which policy by mistake of the parties was made payable to the representatives of Doster instead of to Mashburn & Company as their interest might appear.   During the lifetime of Doster, Mashburn & Company, his creditors, never had the policy of insurance transferred and assigned to them upon the books of the insurance company, but they held the policy and paid the premiums thereon and were in possession of the policy, holding and claiming it as their own, at the time of Doster's death. His administrator, J. P. Doster, recognized that the policy of insurance belonged to Mashburn & Company, and that the proceeds of the policy, when collected, should be paid to that firm; but to protect himself as such administrator, J. P. Doster agreed with Mashburn & Company that the policy of insurance should be collected by J. F. Coney and that the proceeds should be held by Coney and paid over to the parties entitled thereto when their rights might be ascertained.   Coney collected the amount due on the policy, to wit, $1,972, and refuses to pay the fund to the plaintiff, E. P. Johnston, who is the trustee in bankruptcy of Mashburn & Company.   The petition further alleged that Mary C. Fitzgerald,

of Wilcox county, claiming to be a creditor of Mashburn & Company, asserts title to the money in the hands of Coney, under a pretended claim that the policy had been transferred to her to secure her indebtedness by Mashburn & Company; but if ever any transfer was made, as asserted by her, all claims she may have had against Mashburn & Company have been fully paid off and discharged, and she is now asserting such claim to prevent any settlement between Coney and Johnston, trustee. The petition also alleged that the heirs at law of A. J. Doster were J. P. Doster, Willie Doster, and Mattie D. Curry, who were of full age, and the following minors:    George, Nannie, Stephen, Charlie, Ruby, and Ethel Doster; that all of the heirs were residents of Wilcox county except J. P. Doster, who lived in Pulaski county; that Mrs. Mattie Curry claims that, as guardian of the minor children of A. J. Doster, she had said fund set apart as a year's support for said minors, but petitioner denies that said fund was any part of A. J. Doster's estate, and therefore it could not be legally set apart as a year's support for his minor children.    The prayers of the petition were:    (1) a verdict and decree declaring that, as against J. P. Doster, administrator of A. J. Doster, and George D. Mashburn & Company, the fund belongs to Mashburn & Company;    (2) that the minor children of A. J. Doster were not entitled to a year's support out of the fund; (3) that an accounting be had with Mary C. Fitzgerald, and if she has a superior claim to plaintiff, that it be paid and the balance of the fund be paid to petitioner; (4) that petitioner have a verdict and decree against Coney for the amount of the fund; and (5) for general relief.

The defendants J. F. Coney and Mrs. Curry, as guardian of A. J. Doster's minor children, filed answers; the other defendants were served but did not answer.    In the answer filed by Coney he denied that there had ever been any agreement, such as that alleged by the plaintiff, whereby he (Coney) was to collect the insurance policy and pay over the proceeds to the parties entitled to the same, or that he held the insurance fund subject to any such understanding. He also set forth what was his information in regard to the proceedings instituted by Mrs. Curry, as guardian of the minor children of A. J. Doster, to have a year's support set aside for them out of that fund, and alleged that these proceedings resulted in a binding judgment rendered by the court of ordi-

nary, which he had no choice but to obey, awarding the money to said minors and directing that it be paid over to their guardian. He accordingly asserted that the plaintiff had no right of action against him, but should look to Mattie C. Curry, guardian, if the plaintiff had any cause of action whatever with respect to the insurance fund.   In his answer he also called for strict proof of the allegations made in the petition with respect to the policy being taken out and held by Mashburn & Company as collateral security for the payment of A. J. Doster's indebtedness to that firm, as he (Coney) had no knowledge concerning the matter.   In the answer filed by Mrs. Curry, in her representative capacity as guardian, she denied that Mashburn & Company ever held any title to or interest in the policy, and asserted that the policy belonged to the estate of A. J. Doster, and that she, as guardian of his minor children, had received the proceeds thereof, after the policy had been collected by J. P. Doster, as administrator, under a judgment rendered by the court of ordinary of Wilcox county, whereby the fund was duly set apart to said minor children as a year's support.   She set up the further defense, in her answer, that at the time the suit was instituted she and her wards were residents of Wilcox county; that J. F. Coney did not then have in his hands the fund in controversy, nor did Mary C. Fitzgerald or any of the defendants other than herself and her wards have or assert any claim to or against that fund; that these codefendants were improperly joined as defendants, for the purpose of vesting jurisdiction in the superior court of Pulaski county, with a view of depriving this defendant and her wards of their right to be sued in the county of their residence; and that the superior court of that county was without jurisdiction to entertain the suit, so far as they or either of them were concerned.

During the trial of the case, the plaintiff, by leave of the court, filed an amendment to his petition, whereby he effected various changes in his original pleadings.   One only of the changes thus brought about need be stated.   Instead of adhering to his allegation that, "by mistake of the parties," the policy was made payable to the legal representatives of A. J. Doster, the plaintiff inserted in lieu thereof the allegation that "at the time said George D. Mashburn & Company procured said policy of insurance, it was agreed between them and said A. J. Doster that said Doster

would execute such transfers as might be necessary, but failed so to do." ·

The plaintiff introduced as a witness in his behalf D. T. Mashburn, who testified, among other things: "I was a clerk of George D. Mashburn & Company and their bookkeeper up to the time of their failure, and succeeded to their business and looked after it in my own interest. . . G. D. Mashburn, of the firm of G. D. Mashburn & Company, had this insurance taken out on the life of A. J. Doster as a security for what A. J. Doster was owing G. D. Mashburn & Company. G. D. Mashburn paid all the premiums up to the time of their failure; after the failure I paid the premiums up to the death of A. J. Doster. . . The policy, up to the time of the failure of G. D. Mashburn & Company, was in their possession; after that it was in my possession.· I don't think A. J. Doster ever had that policy in his life." At the time of his death, he was indebted to Mashburn & Company in a considerable amount for which he had given his notes, besides some $10 on open account. "I drew these notes and Doster signed them in my presence. G. D. Mashburn & Company were merchants; A. J. Doster was a farmer. He had a running account with them, buying these goods, guano, and supplies generally. The indebtedness that was existing at the time the insurance was taken out continued down to his death. It was increased every year." All of these notes, except one, "were transferred to Mary C. Fitzgerald as security for a debt G. D. Mashburn owed her," but she is no longer the holder of the same. "The policy of insurance was taken out to secure these debts. The notes themselves did not exist at that time, but the indebtedness did. I think the insurance was taken out June 12, 1894. . . The premium paid June 12, 1894, by G. D. Mashburn & Company was charged against him (Doster) on their books. . . A. J. Doster would make payments on his account every year, but the account grew larger and larger each year. . . I did not have anything to do with the planning and arranging for taking out the insurance, but I was present and heard all about it. It was not all taken out in one day, but then he (G. D. Mashburn) talked about it and studied it a little while before he had it done. . . The policy was made payable to A. J. Doster's estate; G. D. Mashburn or G. D. Mashburn & Company's name did not appear in it. It was

never assigned to them.    Their name never appeared on it at all.
G. D. Mashburn & Company took out the policy and always.
claimed it. . . Mr. Doster did not look after the premiums of
this policy at all; but when G. D. Mashburn & Company paid
the premiums, they charged them up on his account. . . A. J.
Doster did not send his cotton or wool for sale to meet the pre-
miums. G. D. Mashburn may have asked him, when he paid the
premiums, to remit him the money on account of them. . . I do
not know that A. J. Doster refused to transfer" the policy to
Mashburn & Company.    That firm "failed January 11 or 12,
1898.    A. J. Doster was at that time alive. . . The insurance
policy was kept in the safe.    I do not think, at the time of the
failure, that they put the policy in the assets that they trans-
ferred to the creditors. . . I bought the assets of G. D. Mash-
burn & Company from the trustee, all except the insurance
policy. . . The insurance policy was left with me.    I did not
claim it, but I held it as collateral for my sister," Mrs. Fitzgerald.
"After the failure of G. D. Mashburn & Company in 1898, they
never paid any of these premiums.    I paid them out of moneys
collected on collaterals held by Mrs. Fitzgerald," acting as her
agent and charging her with the moneys thus expended.

The plaintiff also offered as a witness George D. Mashburn, who
testified to the following effect: From the time the policy was
issued to the time of the failure of Mashburn & Company, it re-
mained in the possession of that firm; and afterwards, until it
passed into the hands of Coney, was in the possession of D. T.
Mashburn.    After the death of A. J. Doster, "I carried it to Mr.
Coney.    Colonel Taylor and Mr. J. P. Doster accompanied me.
Mr. Taylor was representing Mr. Doster.    We placed it in the
hands of Mr. Coney with the understanding that he was to collect
it and hold the proceeds to be used in paying the unsecured debts
of G. D. Mashburn & Company, together with an equal amount
that Mr. Doster was to pay with it.    If it was necessary, Mr.
Doster was to pay an equal amount to pay the unsecured debts of
G. D. Mashburn & Company.    At that time Mr. J. P. Doster was
administrator on A. J. Doster's estate. . .    That policy was
taken out in 1894, and Doster died in 1900.    Thomas Peters was
the agent for the Fidelity Mutual, and I represented G. D. Mash-
burn & Company and got the policy from him, got him to issue it.

G. D. Mashburn & Company paid every one of the premiums until their failure, and D. T. Mashburn paid them afterwards. I took out that policy because A. J. Doster was largely in-debted to us; took it out as security for that indebtedness; and I held it from the time I took it out until I surrendered it to Mr. Coney, as collateral for what he (Doster) owed us. I took it out payable to his representatives, because I expected him to assign it to me. I don't think we had any agreement with Mr. Doster, the deceased, to have it assigned. . . The taking out of this policy by G. D. Mashburn & Company was not a gift to A. J. Doster.' That firm paid the first, and also each quarterly premium, and charged Doster's account with the amounts thus paid, as shown by its books. "The policy lapsed at one time by reason of non-payment of premiums . . We expected Mr. Doster to pay the premium, but he let it go by and lapse; but we paid it and had the policy reinstated, and after that time we had all notices of the premiums sent to us. It lapsed one year after it was taken out. We found out about the policy lapsing for failure to pay the pre-mium, by the company writing us about it. He lived out in the country. The notices might have been sent to us. They were sent to us, I reckon, but I am not sure about that." The plaintiff further proved that prior to the institution of his action he had, through his attorney, made a written demand upon J. F. Coney for the insurance fund in controversy, but without avail.

The evidence offered by the defendants disclosed the following facts as to the collection and disposal of the proceeds of the policy: G. D. Mashburn, J. P. Doster, and Colonel Taylor walked into the office of Coney, and Colonel Taylor said: "Here is a policy we three want to place in your hands." Coney sent the policy on for collection. J. P. Doster, as administrator of A. J. Doster, gave the receipt. The money came into the hands of Coney on this receipt, and on June 27, 1902, upon the instruc-tions of his lawyers, he paid the proceeds over to Mrs. Curry, as guardian, in obedience to a judgment of the court of ordinary of Wilcox county, awarding the fund to the minor children of A. J. Doster as a year's support. At that time Coney "knew G. D. Mashburn & Company were in bankruptcy, and that the trustee in bankruptcy was claiming the fund." The defendants also intro-duced the following testimony of John P. Doster, who was the

administrator of A. J. Doster: "I do not know who paid the premiums on the insurance policy. I know I helped him (A. J. Doster) pack wool and put it on his wagon," upon one occasion, in order that he might bring it to town the next day. "He seemed to be in a hurry to get his wool off the next day, and I helped him put it on the wagon. He said he had to bring it to town to pay his premiums on his insurance policy. I have seen him get up cattle to pay his premiums. . . I was a member of the firm of George D. Mashburn & Company during all this time. If the firm of G. D. Mashburn & Company claimed this policy, I do not know anything about it; I never claimed it." When that firm failed, I came to town to investigate its affairs, and "G. D. Mashburn at that time made out a statement of what the firm owed for me, but never gave me the amount of the assets. During that time this policy was never referred to as part of the assets." "I, as administrator, receipted the policy that was on the life of A. J. Doster. Mashburn, myself, and Col. Taylor turned it over to Mr. Coney. We went to the bank, and I signed the receipt. . . We turned it over to Mr. Coney, and neither one was to draw it out without the consent of all. That was done under the advice of my attorney, and that was the way I collected it. . . It was turned over for the debts of George D. Mashburn & Company. . . G. D. Mashburn was holding the policy, and refused to turn it over to me as administrator. I do not know why he was holding it. . . I do not know that he was claiming it as belonging to G. D. Mashburn & Company. He never did tell me he held it because of the debt due to the firm by A. J. Doster. He might have set up some claim, but not that. . . I claimed the policy as administrator on the estate of A. J. Doster." The policy was not put into the hands of Coney to collect "with the understanding and agreement that, to the extent of the debt of A. J. Doster, it should be paid to George D. Mashburn's unsecured creditors." A son of A. J. Doster testified in behalf of the defendants: "Tom Peters got me to endorse some notes for insurance premiums. It was in this insurance. All I know of the payment of premiums [and] the lapsing of the policy was what my father told me. . . I know that he kept his papers, except his land deeds, in Mashburn's safe for safe-keeping." During the last illness of A. J. Doster, Mashburn wanted to get from him a transfer of this policy, but witness

asked Mashburn not to do so. At that time Mashburn claimed the policy belonged to the estate of A. J. Doster, "and he wanted to have it transferred and leave everybody else out in the cold." A. J. Doster was a large customer of Mashburn & Company, and "was at all times marketing his crops of cattle, wool, and cotton, and crediting the proceeds on his account. . . He got advances from G. D. Mashburn & Company and made payments" from time to time. The defendants introduced certain documentary evidence, including a copy of the proceedings whereby the year's support was set aside to the minor children of A. P. Doster at the instance of their guardian, Mrs. Curry. The plaintiff also introduced documentary evidence bearing upon certain issues; but as this evidence throws no light upon the controlling questions we are called upon to decide, it need not be further considered.

After both sides had announced closed, the court, on motion of counsel for the defendants, directed a verdict in their favor. The plaintiff thereupon sued out a bill of exceptions, in which he assigned error upon the direction of the verdict, and in which he further complained of various rulings of the court, made during the progress of the trial, with respect to the competency of certain evidence offered by him and by the defendants, respectively.

1. The plaintiff's right to recover the proceeds of the insurance policy hinged on his showing title to the fund. If the title was in the estate of the insured, then his minor children were entitled to have the fund set apart as a year's support. The original claim of the plaintiff was that by mistake of the parties the policy was made payable to the representatives of the insured. By an amendment to the petition this theory was abandonded, and the plaintiff predicated his right to recover upon the allegation that "at the time said George D. Mashburn & Company procured said policy of insurance, it was agreed between them and said A. J. Doster that said Doster would execute such transfers as might be necessary, but failed so to do." The evidence wholly failed to make out the case thus laid. There was no evidence of any understanding or agreement whatever between A. J. Doster and Mashburn & Company whereby that firm was to take out a policy on his life and hold the same as collateral security for his indebtedness to it, nor does the evidence disclose that after the policy was taken out by Mashburn & Company, Doster ever

pledged it to that firm as collateral security or agreed that they should have any beneficial interest therein. Certain it is that the plaintiff failed to prove that at the time the policy was issued, there was an agreement between Mashburn & Company and Doster to the effect that the latter "would execute such transfers as might be necessary." Indeed, the only evidence on this point was the testimony of George D. Mashburn, at whose instance the policy was issued, who swore: "I don't think we had any agreement with Mr. Doster, the deceased, to have it assigned." Counsel for the plaintiff, however, on the argument here, insisted that under the facts attending the issuance of the policy and the payment of premiums, a trust resulted to Mashburn & Company; that the equitable title to the policy was in that firm, and that therefore the plaintiff was entitled to recover, on this equitable title, the proceeds of the policy. A trust will be implied "whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstance, is either wholly or partially in another." Civil Code, § 3159. The record in this case does not show any implied trust. While it is true that Mashburn & Company did retain the physical custody of the policy, and advanced the money with which to pay the premiums falling due thereon from time to time, yet these premiums were charged against the insured on his general account with that firm, and the only fair inference from the testimony is that Mashburn & Company did not pay the premiums on their own account as a liability of their own, but merely by way of an advance or loan to the insured. "The person in whose favor a trust is claimed to result must pay the purchase-money as his own; if he merely advances it as a loan, no trust will result." Bispham's Equity, § 81. Mashburn & Company had possession of the policy and full knowledge of its terms. For several years these premiums were paid, and no effort was made to have the beneficiary of the policy changed or a written assignment of the policy made to the firm. The mere physical custody of the policy would not, of itself, create either a trust or a lien. It has been held that the deposit of title deeds to secure money advanced to a debtor does not create an equitable lien in favor of his creditor. *Davis* v. *Davis,* 88 *Ga.* 191; *Pierce* v. *Parish,* 111 *Ga.* 725. At most, under the facts appearing in the record, the

plaintiff could only contend for an equitable lien on the fund, to reimburse Mashburn & Company for the advances made to pay the premiums.' Conceding his lien for reimbursement, it would be inferior to the rights of the minors to a year's support in their father's estate. . Civil Code, § 3465. This fund was duly and legally set apart to the minor children of A. J. Doster; the title to the policy was in his estate, and the plaintiff had no right to recover the proceeds of the policy from Coney, who had paid such proceeds over to Mrs. Curry, as guardian, she being the proper person to receive the same.

2. The plaintiff sought to prove by George D. Mashburn that neither " at the time of taking out said policy, nor at any subsequent time, was it the intention of G. D. Mashburn & Company to make a gift of said policy to A. J. Doster or to his estate," but on the contrary that George D. Mashburn, acting in behalf of his firm, " agreed with A. J. Doster that he (Mashburn) would take out this policy on Doster's life to secure the indebtedness held by Mashburn & Company," and that when the policy was issued, " Doster was to then transfer said policy to G. D. Mashburn & Company for that purpose." This evidence was objected to by the defendants, and excluded by the court, on the grounds (1) that the intention of Mashburn & Company as to making a gift of the policy to Doster illustrated no issue in the case, and (2) that George D. Mashburn was an incompetent witness to testify to any transaction with A. J. Doster, the deceased. Under the express terms of the evidence act of 1889, Mashburn was clearly an incompetent witness to testify as proposed. Had the suit been instituted in the name of Mashburn & Company instead of by its trustee in bankruptcy, neither member of that firm would have been a competent witness to testify as to transactions had with A. J. Doster; for the defendants to the suit were his legal representative and others claiming the fund as an asset of his estate, and not otherwise. The above-cited act provides that where "any suit is instituted or defended by . . the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor . . as to transactions or communications with such . . deceased person." Civil Code, § 5269 (1). And the further provision is made in that act that " Where a person not a party, but a person interested in the re-

sult of the suit, is offered as a witness, he shall not be competent to testify, if, as a party to the cause, he would for any reason be incompetent." Id. § 5269 (4). Although not a party to the action, George D. Mashburn was, because of his interest in its result, as a member of the firm represented by the trustee in bankruptcy, clearly incompetent to testify as he offered to do.

3. The plaintiff also undertook to show by the same witness, that "during the lifetime of A. J. Doster, it was known by Mrs. Curry that this policy was held by G. D. Mashburn & Company as security for their debt;" that during the last illness of A. J. Doster, four of his children, including Mrs. Curry, were present when the witness "proposed to have A. J. Doster to execute a transfer to said policy, . . and that Mrs. Curry begged him not to trouble her father at that time, as they would recognize Mashburn & Company's right to this policy in the event of his death;" and that subsequently, after the death of A. J. Doster, she "recognized that the policy belonged to G. D. Mashburn & Company, and proposed to give them in trade therefor a tract of land belonging to her." The court excluded this testimony, on objection of counsel for the defendants, because Mrs. Curry's knowlege or conduct in regard to this matter could not affect the rights of the minor children whom she represented as guardian in the present action. It may also be remarked that what she said or did could in no way prejudice Coney or her other codefendants. As an individual, no relief was prayed against her. What occurred before the death of A. J. Doster was prior to her appointment as guardian of his minor children, and therefore she could at that time bind them by no admissions or promises on her part. Her subsequent proposal, made in her individual capacity, to trade for the policy, giving therefor a tract of land belonging to her, could not affect the rights of her wards, even though such proposal were made after she became their guardian. When this proposal was made does not appear. What has above been said applies also to other assignments of error touching the rejection of similar evidence offered by the plaintiff.

4. An effort to impeach one of the defendants' witnesses was made by offering to show by another witness, introduced by the plaintiff, that George D. Mashburn had not, by word or conduct, on certain occasions mentioned by the defendants' witness, recog-

nized and virtually admitted that the policy of insurance belonged to the estate of A. J. Doster and that Mashburn & Company had no interest therein. The court excluded the proffered evidence. As its admission could in no way have aided the plaintiff in establishing the main contention upon which he relied for a recovery, viz., that there was an agreement made with A. J. Doster whereby the firm of Mashburn & Company was to hold the policy of insurance as security; and as the plaintiff wholly failed to sustain this contention, it matters not whether the court did or did not commit error in rejecting this evidence. Treating it as a part of the proof introduced by the plaintiff, and giving to it the full effect it was intended to have, i. e., the successful discrediting of the defendants' witness, yet a verdict against the plaintiff was demanded.

Another assignment of error may be likewise disposed of. Over the objection of the plaintiff, the court admitted an agreement, signed by the attorney for Mrs. Fitzgerald, by attorneys representing Mrs. Curry both in her individual capacity and in her representative character as guardian, and by George D. Mashburn individually, and J. P. Doster as administrator of A. J. Doster. This agreement provided that Mrs. Fitzgerald should dismiss an appeal to the superior court, entered by her to the judgment of the court of ordinary, awarding the proceeds of the policy to the minor children of A. J. Doster as a year's support, etc. Doubtless this document was wholly irrelevant and inadmissible. But regarding it as having been excluded, a finding against the plaintiff was demanded. The same may be said as to certain testimony of the witness John P. Doster, objected to by plaintiff's counsel, as to assertions of ownership of the policy, made by A. J. Doster during his lifetime in the presence of the witness.

5. It only remains to dispose of the complaint of the plaintiff in error that the court below directed a verdict in favor of all of the defendants, notwithstanding two only of them filed answers and defended the action. It may be conceded that in so doing the court committed error. But how was the plaintiff thereby denied any substantial right or advantage? No relief was prayed against any of the defendants named in the plaintiff's petition, except the two who answered and Mrs. Fitzgerald and J. P. Dos-

ter, the administrator of A. J. Doster.   Since, as against Coney and the minor children of A. J. Doster, the plaintiff has failed to establish and is now precluded from asserting any claim to the fund in controversy, an accounting with Mrs. Fitzgerald and a decree that she had no interest in the fund would be useless, especially as she no longer claimed it when the suit was filed.   A judgment against Coney for the amount of the proceeds of the policy was asked, but the plaintiff did not pray for a similar judgment against Doster, as administrator.   Indeed, Coney was alleged to be a stakeholder, and the only prayer for relief against the administrator was that, as between him and Mashburn & Company, "the said fund in the hands of said J. F. Coney [be decreed to belong] to George D. Mashburn & Company and not to said estate." In other words, the plaintiff wanted a decree to the effect that Doster, as administrator, was not entitled to demand of and receive from Coney the insurance fund which had come into his hands as a stakeholder.   Such a decree, at this stage of the litigation, could do the plaintiff no possible good, as the fund has passed into the hands of others from whom he can not hope to wrest it, and Coney, who paid it over to them, has been held to have been justified in so doing.   The administrator is bound by the judgment below, and therefore can never recover the fund from the minor children to whom it has been awarded.   As it can not now come into his hands from any source for administration, a decree that, as between him and the plaintiff, the latter has the better right thereto would avail him nothing.   We accordingly decline to disturb the judgment rendered in the lower court.

*Judgment on the main bill of exceptions affirmed ; cross-bill dismissed.   All the Justices concur.*