### 22843. HUDSON v. HUDSON.

ARGUED FEBRUARY 8, 1965—DECIDED MARCH 4, 1965—
REHEARING DENIED MARCH 16, 1965.

*Hallie B. Bell, T. Coleman Bloodworth,* for plaintiff in error.
*O. L. Crumbley, Harris, Russell & Watkins,* contra.

GRICE, Justice. Controversy between a former husband and wife over proceeds of an insurance policy brought about the rulings for review here. This controversy stems from construction of the agreement of settlement which the claimants entered into in contemplation of their divorce.

The litigation began when the Pan American Life Insurance

Company filed in the Superior Court of Bibb County a petition for interpleader against Edgar Nowell Hudson and Mrs. Thelma C. Hudson, each of whom had made claim to the proceeds of an insurance policy issued by it.

Upon a hearing, the trial court entered an order granting the interpleader under *Code Ann.* § 37-1503. It ordered the insurer to pay into court the proceeds and be thereby dismissed, with costs and its attorneys' fees from the proceeds, and directed the former husband and wife to set up and litigate their disputed claims to the fund.

The exception to this order of interpleader having been expressly abandoned, it is not necessary to fully set out the allegations of the petition for interpleader or the demurrers thereto. Therefore, only those allegations of the insurer's amended petition which relate to the dispute between the claimants will be recited here.

Insofar as material, it made the allegations which follow. The insurer issued an endowment life insurance policy, copy attached, in a specified amount on the life of the former wife, who was the owner thereof, and in which the former husband was named as revocable beneficiary. The policy thereafter matured as an endowment policy in a stated amount. The former husband now has and always has had possession of such policy. He has notified the insurer that pursuant to the terms of the settlement agreement with his former wife in their divorce action, copy attached, which purportedly settled all property rights between them, he claims such proceeds, and he has demanded payment thereof. The former wife has also notified the insurer that she claims such proceeds and has demanded payment of the same.

The former husband, in his answer, admitted the issuance of the policy on the life of the former wife, her ownership of it at that time, and his being named the revocable beneficiary. He also admitted that the policy had since matured as an endowment one, that the proceeds are being held by the insurer, and that the settlement agreement referred to by the insurer became a part of the final judgment and decree in the divorce proceeding. He asserted that prior to and since said agreement was executed he has had sole and exclusive possession of such

policy; that he alone has paid the premiums thereon and at no time has his former wife exercised any control over it. He contended that under the agreement, properly construed, he was entitled to such proceeds; that at no time since said agreement has his former wife made any claims to said policy until it matured; and that he is the sole and exclusive owner of the same and of its proceeds. He prayed that the insurer be required to pay said proceeds to him.

The former wife answered, asserting that the policy was her own individual property and hence was not subject to the settlement agreement and that she still owns it and is entitled to the proceeds. She prayed that they be awarded to her.

The former wife also lodged general and special demurrers to the former husband's answer and moved to strike it. Such demurrers were overruled and the motion was denied. She also interposed an answer to the answer of the former husband, denying its material allegations.

The matter came on for trial without the intervention of a jury, upon an agreed statement of facts. The court awarded the proceeds, less the insurer's attorneys' fees and costs, to the former husband. The former wife assigns error upon that judgment and upon the overruling of her demurrers to the former husband's answer and the denial of her motion to strike such answer.

■ Review of the judgment overruling the former wife's general and special demurrers and denying her motion to strike the former husband's answer all of which raise the same basic question, requires an examination of the allegations of his answer so as to determine whether he, not the former wife, owns the policy and is therefore entitled to its proceeds.

At the time the policy was issued the wife was unquestionably its owner. The former husband's answer admits that. And where, as here, the insured reserves the right to change the beneficiary, the latter acquires no vested right or interest. *Wimbush v. Lyons*, 203 Ga. 273 (2) (46 SE2d 138); *Bankers Health &c. Ins. Co. v. Crozier*, 192 Ga. 111 (1) (14 SE2d 717).

Neither the payment of premiums by the husband in the absence of a contract, nor his continued possession of and exclu-

sive control over the policy, as alleged in his answer, establishes ownership of the policy. See in this connection, *Johnston v. Coney*, 120 Ga. 767 (1), 776 (48 SE 373); *Bankers Health &c. Ins. Co. v. Crozier*, 192 Ga. 111 (2), supra.

In the former husband's answer, chief reliance is made upon the settlement agreement entered into between these parties and incorporated in their divorce decree. He contends that, although the former wife owned the policy when it was issued, she lost that ownership by her releases to him in the settlement agreement. We have carefully considered that agreement in order to determine whether by it the former wife did divest herself of ownership of this policy. Our conclusion is that she did not.

In seeking the intention of the parties to this agreement, insofar as the policy of insurance is concerned, we must consider the language employed in the light of the circumstances prompting the agreement.

At the very outset, the agreement recited the pending litigation, and immediately following, it employed these terms: "Now therefore, in full and complete settlement, adjustment and compromise of any and all claims which either party hereto has or might claim to have against the other party hereto, and in full and complete settlement, adjustment and compromise of any and all claims which [the wife] has or claims to have against [the husband] for temporary or permanent alimony, for counsel fees, or for support, it is hereby agreed as follows. . ."

The provisions immediately following effectuate the purpose of the agreement. They are conveyances and releases *by the husband* to the wife of specific properties. While mention is made of two other policies being released by the husband to the wife, the one in question here is not mentioned anywhere in the agreement.

After the husband's conveyances and releases to the wife and the recital of future monetary payments to her, there was a release and relinquishment by the wife of "all claims that she now has, or may have, to any and all other property of every kind and character not described in this contract nor claimed herein by [the wife] to [the husband]."

This provision did not, as contended by the former husband,

pass title to this policy from the former wife to him. This provision and the other one quoted above, while general in form, must be interpreted in keeping with the purpose of the agreement and with all of its provisions, to arrive at the intention of the parties.

The purpose of the agreement was to provide the basis for a judgment for permanent *alimony,* that is, "an allowance *out of the husband's estate,* made for the support of the wife. . ." (*Code* § 30-201), not the reverse. (Emphasis ours.) While releases by the wife to the husband of her individual property may in some instances be a part of the overall settlement of alimony, the agreement here, as we view it, was not intended as a carte blanche conveyance from the wife to the husband of *all* of her property so as to leave her with only such property as the husband in this agreement released to her. He did not expressly release or convey to her such items as her clothing and other personal effects, yet no one would contend that such items became his property under the clause as to her release and relinquishment to him of "any and all other property . . . not described in this contract."

The construction which we make here accords with that given in *Pate v. Citizens & Southern Nat. Bank,* 203 Ga. 442 (4) (47 SE2d 277) (one Justice not participating). There this court held: "The trial court did not err in holding that a contract between husband and wife entered into in contemplation of a divorce proceeding, in which the parties, 'desiring to settle the question of alimony,' and agreeing to a stipulated sum in consideration of which the wife 'releases said husband from all claims set forth herein and all other claims, real or imaginary,' was for the purpose of settling the question of alimony, and did not therefore affect the contingent claim of right of the wife as beneficiary of any life insurance policies."

This construction is also in keeping with that made in other jurisdictions. One treatise recites: "The intent is to be sought from the whole and every part of the instrument; and where general words are used, if it appears by other clauses of the instrument . . . that it was the intent of the parties to limit the discharge to particular claims only, courts, in construing it, will so limit it; and although the terms of a release are

general, their operation will be limited to those things within the contemplation of the parties at the time of its execution." 45 Am.Jur. 693, Releases, § 28. See also in this connection, 76 CJS 697, Release, § 52.

Finding that no basis is alleged in the former husband's answer for any divestment by the wife of her ownership of the policy of insurance involved here, we hold that the trial court erred in overruling her demurrers and in denying her motion to strike his answer.

■ In view of the foregoing holding, it is not necessary to consider the assignment of error based upon the subsequent judgment awarding the net proceeds of the policy to the former husband.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., and Candler, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. The property settlement contract awarded various described properties to each party, among which were two insurance policies for $1,000 each on the life of Mrs. Hudson, which Mr. Hudson obligated to deliver to her. This fact shows that they were both conscious at the time of the value of life insurance policies. The very next sentence is a release by her to him of all claims she now has or may hereafter have to "any and all other property *of every kind* or *character* not described in this contract nor claimed herein by Mrs. Hudson." (Italics mine).

Indisputably Mrs. Hudson had not therein claimed the policy here involved, and this policy was unquestionably her property at that time, and she expressly released and relinquished all claims she then had or may thereafter have to all property, which would include this policy, to Mr. Hudson. This was a valid assignment of all her claims then or thereafter to said policy to Mr. Hudson, and the insurance company was bound to respect this assignment.

In addition to the foregoing plain right and title conferred upon Mr. Hudson by terms of the contract, subsequent conduct of both parties shows that they so understood it. She did not pay premiums thereon which was essential to its being kept in force, thus showing she thought the contract had divested her of title thereto. On the other hand he continued to pay the

premiums of $91.16 per year for eight years, totaling $729.28, while knowing that in the absence of the contract such payments were for her benefit and not his, and knowing she could remove him as beneficiary therein at will. To say he or any normal person would thus spend his money voluntarily for the benefit of a former wife whom he had divorced and with whom he had made a property settlement is absurd and ignores human nature.

To sustain the argument that he might have paid the premiums because he hoped she would let him remain the beneficiary, and that she would die before its maturity, it seems to me would require that it be first found that he was utterly incompetent. Since this endowment policy was more valuable than either of the other two life policies, each in amounts the same as this policy, would she not have required him to deliver it instead of one of the two she did require him to deliver to her? How could she have thought of them and not of this one? If he merely wanted the benefit of the possibility of receiving the proceeds of a policy as beneficiary would he not have chosen one of the others with much smaller premiums for the same possible benefit? To attempt to avoid the plain terms of the contract where these parties set forth in their own chosen language their respective rights in the face of the foregoing solid reasons for enforcing the contract as written, upon the assertion that her "releasing and relinquishing" to him "all claims she now has or may have" does not amount to a conveyance thereof, requires ignoring the intention of the parties as disclosed by the contract as well as a misconception of the words just quoted.

Furthermore, the very answer she filed in this case shows that she understands the word "claim" means title. In paragraph 2 she admits that she had notified the petitioner "that she claims ownership of the described policy as owner thereof."

I believe courts should give full effect to valid contracts of the parties. The sole purpose of this contract was to put at rest all claims of either to property therein released to the other. The judgment should be affirmed.

I am authorized by Mr. Justice Candler to say he concurs in this dissent.