27 F.3d 521
 1994-2 Trade Cases P 70,676
 U.S. ANCHOR MFG., INC., Plaintiff, Counterclaim defendant,
Appellee, Cross-Appellant,
v.
RULE INDUSTRIES, INC., Defendant-Appellant, Cross-Appellee,
Tie Down, Inc., a/k/a Tie Down Engineering, Inc., Defendant,
Counterclaim plaintiff, Appellant, Cross-Appellee,
William Chapman, Counterclaim defendant.
 No. 91-8854.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 3, 1994.
 
 Harold T. Daniel, Jr., Laurie Webb Daniel, Webb & Daniel, Atlanta, GA, for Tie Dow, Inc.
 Charles M. Shaffer, Jr., J. Kevin Buster, Sean R. Smith, Atlanta, GA, for Rule Industries, Inc.
 J. Alexander Porter, Simuel F. Doscer, Jr., Porter & Barrett, Atlanta, GA, for appellee.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This case involves an appeal from a jury verdict imposing civil liability for alleged predatory pricing in violation of antitrust laws. More specifically, appellants Rule Industries, Inc. ("Rule") and Tie Down Engineering, Inc. ("Tie Down"), defendants below, appealed the district court's denial of their motions for judgment notwithstanding the verdict on claims by U.S. Anchor Manufacturing, Inc. ("U.S. Anchor") that Rule and Tie Down attempted and conspired to monopolize the United States market for light weight fluke-style anchors for small boats by means of below-cost pricing intended to drive out competition. U.S. Anchor cross-appealed the district court's order of a directed verdict on its state law claims arising from the same factual allegations.
 
 
 2
 In an opinion published at 7 F.3d 986 (11th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2710, 129 L.Ed.2d 837 (1994), we reversed the denial of defendants' motions for judgment notwithstanding the verdict on the federal claims and rendered judgment for the defendants thereon. As to the state law claims, we held that U.S. Anchor adequately stated in its complaint valid claims for damages as a result of a conspiracy in restraint of trade and intentional interference with business relations. Because we found confusion in the decisions of the Georgia courts regarding certain dispositive issues, we certified the following questions for consideration by the Supreme Court of Georgia:
 
 
 3
 1. Does a general release under Georgia law discharge liability for injury caused by subsequent acts in the course of a scheme or conspiracy that was ongoing at the time the release was executed but unknown to the releasing party?
 
 
 4
 2. Does a general release under Georgia law discharge liability for injury caused by tortious conduct already committed that was unknown to the releasing party at the time the release was executed?
 
 
 5
 3. Does the tort of intentional interference with business relations encompass predatory pricing below some measure of the defendant's costs?
 
 
 6
 4. If the answer to question 3 is yes, then in a case of actionable predatory pricing below some measure of cost by a conspiracy or a single defendant, what is the appropriate measure of the defendants' costs?
 
 
 7
 In answer to our first question, the Supreme Court of Georgia held "that a general release under Georgia law does not discharge liability for injury caused by subsequent acts in the course of a scheme or conspiracy that was ongoing at the time the release was executed." U.S. Anchor Mfg., Inc. v. Rule Industries, Inc., 443 S.E.2d 833, 835 (1994).
 
 
 8
 Concerning the second question, the Supreme Court of Georgia held that, "in order to discharge liability for already committed, but unknown tortious conduct, a general release must in some manner so specify." Id. at 836 (citations omitted). Because the release in question does not specify an intention to discharge liability for undiscovered conduct and because a general release is ineffective to discharge liability for subsequent acts, we hold that there is no contractual bar to U.S. Anchor's claims.
 
 
 9
 In answer to the third question concerning the viability of a tort of intentional interference with business relations based on predatory pricing by a single defendant below some measure of that defendant's costs, the supreme court held "that below-cost pricing by a single defendant is not improper in the absence of some other unlawful element and, thus, is not encompassed by the tort of intentional interference with business relations." Id. at 836. Therefore, U.S. Anchor's claim of intentional interference must fail unless it can show the existence of a conspiracy or some other unlawful action by one of the defendants.
 
 
 10
 Because the supreme court answered the third question in the negative, the court did not answer the fourth certified question. In light of the Supreme Court of Georgia's opinion, attached hereto as an appendix, we vacate the district court's grant of a directed verdict on the state law claims and remand this case for further proceedings consistent with the opinion of the Supreme Court of Georgia.[1]
 
 VACATED and REMANDED.APPENDIX
 
 11
 [Published at 443 S.E.2d 833.]
 
 In the Supreme Court of Georgia
 
 12
 Decided: May 16, 1994.
 
 
 13
 S94Q0409. U.S. ANCHOR MANUFACTURING, INC. v. RULE
 
 
 14
 INDUSTRIES, INC. et al.
 
 
 15
 CARLEY, Justice.
 
 
 16
 In November, 1985, Rule Industries, Inc. (Rule) brought suit against U.S. Anchor Manufacturing, Inc. (U.S. Anchor), alleging infringement of certain trademarks and copyrights. On March 19, 1986, the parties executed a settlement agreement, providing, in part, that each party released the other
 
 
 17
 from any and all actions, demands, claims or causes of action whatsoever, which now exist or which may arise in the future, as a result of events which occurred prior to the execution of [this] Settlement Agreement, including, without limitation, any claims which were or could have been presented by way of complaint or counterclaim in [the trademark action].
 
 
 18
 In November, 1986, U.S. Anchor brought the instant suit in federal court against Rule and Tie Down Engineering, Inc. (Tie Down), alleging, among other things, that they violated federal law by attempting and conspiring to monopolize the U.S. market for light weight fluke-style anchors for small boats by means of below-cost pricing intended to drive out competition. U.S. Anchor also asserted state law claims. The trial court denied cross-motions for summary judgment. U.S. Anchor Mfg., Inc. v. Rule Industries, Inc., 717 F.Supp. 1565 (N.D.Ga.1989). The trial court later granted Rule's and Tie Down's motions for directed verdict on the state law claims and entered judgment on the jury's verdict in favor of U.S. Anchor for the attempted monopolization and conspiracy counts. Rule and Tie Down appealed the denial of their motions for j.n.o.v. and new trial, and U.S. Anchor cross-appealed the directed verdict on its state law tort claims.
 
 
 19
 The United States Court of Appeals for the Eleventh Circuit reversed on the federal law claims, holding that there was no dangerous probability of success in any attempt to achieve monopoly power, U.S. Anchor Mfg., Inc. v. Rule Industries, Inc., 7 F.3d 986, 1001 (11th Cir.1993), and that there was insufficient evidence to support a finding of conspiracy under federal law, which requires evidence excluding the possibility that the defendants acted independently or legitimately. U.S. Anchor, 7 F.3d at 1002.
 
 
 20
 As to the state law claims, the U.S. Court of Appeals held that U.S. Anchor adequately raised tort claims for both conspiracy in restraint of trade and intentional interference with business relations. U.S. Anchor, 7 F.3d at 1002-1003. The U.S. Court of Appeals declared that the
 
 
 21
 novel questions presented are whether below-cost pricing can satisfy the improper action element of [intentional interference with business relations] and whether low prices, standing alone, can constitute a prohibited inducement of the plaintiff's customers. [Cit.]
 
 
 22
 U.S. Anchor, supra at 1003. Expressing "some doubt as to whether intentional interference with business relations is a distinct cause of action from the tort of conspiracy in restraint of trade," the U.S. Court of Appeals stated that, "while it appears settled that predatory pricing by a group or conspiracy is actionable, we have found no Georgia authority addressing predation by a single defendant acting unilaterally." U.S. Anchor, 7 F.3d at 1003-1004. The U.S. Court of Appeals retained pendent jurisdiction over the state law claims, but certified the following four questions of law to this court:1. Does a general release under Georgia law discharge liability for injury caused by subsequent acts in the course of a scheme or conspiracy that was ongoing at the time the release was executed but unknown to the releasing party?
 
 
 23
 2. Does a general release under Georgia law discharge liability for injury caused by tortious conduct already committed that was unknown to the releasing party at the time the release was executed?
 
 
 24
 3. Does the tort of intentional interference with business relations encompass predatory pricing below some measure of the defendant's costs?
 
 
 25
 4. If the answer to Question 3 is yes, then in a case of actionable predatory pricing below some measure of cost by a conspiracy or a single defendant, what is the appropriate measure of the defendant's costs?
 
 
 26
 U.S. Anchor, 7 F.3d at 1005-1006.
 
 
 27
 1. The first question focuses on a conspiracy which continues beyond the execution of a general release and which causes injury, not by the continuing effect of pre-release acts, but rather by new post-release acts.
 
 
 28
 "A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. [Cit.] ' "Accurately speaking, there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a formed conspiracy, but none for the conspiracy alone. While the crime of conspiracy may be committed without doing any overt act in pursuit of the combination, no civil liability is incurred for the conspiracy, but only for the overt acts of the conspirators." [Cit.] "Where civil liability for a conspiracy is sought to be imposed, the conspiracy of itself furnishes no cause of action...." (Cits.)' [Cits.]" [Cit.] (Emphasis in original.)
 
 
 29
 First Fed. Sav. Bank v. Hart, 185 Ga.App. 304, 305(2), 363 S.E.2d 832 (1987). See also Brown & Allen v. Jacobs' Pharmacy Co., 115 Ga. 429, 433, 41 S.E. 553 (1902).
 
 
 30
 It follows that a document containing language which is construed to discharge liability for injury caused only by previously occurring acts does not, by its terms, discharge liability for injury caused by subsequent acts merely because those acts resulted from a previously existing scheme or conspiracy. See Eatonton Oil & Auto Co. v. Greene County, 53 Ga.App. 145(2), 185 S.E. 296 (1936). Compare Lewis v. Schlenz, 161 Ga.App. 222, 224(1), 291 S.E.2d 55 (1982); Ivey v. Ivey, 234 Ga. 532(1), 216 S.E.2d 827 (1975). Therefore, in answer to the first question, we hold that a general release under Georgia law does not discharge liability for injury caused by subsequent acts in the course of a scheme or conspiracy that was ongoing at the time the release was executed.
 
 
 31
 2. The second question addresses tortious conduct which had already been committed, but which was unknown to the releasing party at the time a general release was executed.
 
 
 32
 A release is subject to the same rules of construction as govern ordinary contracts in writing. Thomaston v. Fort Wayne Pools, Inc., 181 Ga.App. 541(1), 352 S.E.2d 794 (1987). Thus, "[a] release is to be construed according to the intent of the parties." Central Ga. Power Co. v. Pope, 144 Ga. 130, 134(3), 86 S.E. 322 (1915).
 
 
 33
 Ordinarily, a general release does not discharge liability for injury caused by unknown tortious conduct which has already been committed. "[A]lthough the terms of a release are general, their operation will be limited to those things within the contemplation of the parties at the time of its execution.' [Cits.]" Hudson v. Hudson, 220 Ga. 730, 734-735(1), 141 S.E.2d 453 (1965). However, it is possible that a party may intend to discharge liability for injury caused by unknown tortious conduct. "Parties may execute an instrument which will release all claims of every character, although they may not have in special contemplation a particular claim or item of damages." Central Ga. Power Co. v. Pope, supra at 134(3), 86 S.E. 322. Nevertheless, an intention to release a party from liability for unknown conduct must be clearly expressed.[S]ince contracts must be construed according to the intention of the parties at the time of their execution it will not be presumed that parties intend to contract away their legal rights in regard to a subject matter not clearly appearing therein.
 
 
 34
 Covington v. Brewer, 101 Ga.App. 724, 729(3), 115 S.E.2d 368 (1960). Here, the subject matter in question is unknown tortious conduct. Accordingly, in answer to the second question, we hold that, in order to discharge liability for already committed, but unknown tortious conduct, a general release must in some manner so specify. See, e.g., Sakas v. Jessee, 202 Ga.App. 838, 841(1), 415 S.E.2d 670 (1992). Compare Kennedy v. Bateman, 217 Ga. 458, 460-461, 123 S.E.2d 656 (1961); Aetna Cas. & Sur. Co., Inc. v. W.G. Lothridge Contracting Co., Inc., 163 Ga.App. 731, 296 S.E.2d 83 (1982) (wherein there was no indication that the claims were unknown at the time that the release was executed).
 
 
 35
 3. The third question concerns the viability of the tort of intentional interference with business relations for predatory pricing by a single defendant below some measure of that defendant's costs.
 
 
 36
 "The policy of the common law has always been in favor of free competition.... In the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiations behind the plaintiff's back, refuse to deal with him...." [Cit.] (Emphasis supplied.)
 
 
 37
 Parks v. Atlanta News Agency, Inc., 115 Ga.App. 842, 845, 156 S.E.2d 137 (1967). See also Southern Business Communications, Inc. v. Matsushita Elec. Corp. of Amer., 806 F.Supp. 950, 962 (N.D.Ga.1992); Prosser, The Law of Torts Sec. 130, p. 954-955 (4th ed. 1971). Parks distinguished cases wherein "the wrong ... arose from an unlawful combination, breach of contract, or inducement to another to breach a contract." Parks v. Atlanta News Agency, Inc., supra, 115 Ga.App. at 845, 156 S.E.2d 137.
 
 
 38
 Strickland v. Ports Petroleum Co., Inc., 256 Ga. 669, 353 S.E.2d 17 (1987) held unconstitutional a statute forbidding the sale of octane or cetane fuels below cost where the potential effect of such below-cost sale would be substantially to lessen competition or tend to create a monopoly.
 
 
 39
 This court has repeatedly declared "that '(t)he right to contract, and for the seller and purchaser to agree upon a price, is a property right protected by the due-process clause of our Constitution, and unless it is a business "affected with a public interest," the General Assembly is without authority to abridge that right.' (Cits.)" ..., no matter what other states or the Supreme Court of the United States "may or may not have decided." [Cit.] (Emphasis omitted.)
 
 
 40
 Strickland v. Ports Petroleum Co., Inc., supra at 670, 353 S.E.2d 17.
 
 
 41
 Accordingly, in answer to the third question, we hold that below-cost pricing by a single defendant is not improper in the absence of some other unlawful element and, thus, is not encompassed by the tort of intentional interference with business relations.
 
 
 42
 4. Because the third question is not answered in the affirmative, the fourth question need not be answered.
 
 
 43
 Certified questions answered.
 
 
 44
 All the Justices concur.
 
 
 
 [1]
 We have previously held that the district court erred by directing a verdict on U.S. Anchor's state law claims for conspiracy in restraint of trade and intentional interference with business relations. U.S. Anchor, 7 F.3d at 1002-03. Since that conspiracy claim is based upon predatory pricing and the Supreme Court of Georgia did not answer the fourth question certified to it, upon remand, the district court, if it finds sufficient evidence of a conspiracy, will need to make its own determination of the appropriate measure of costs for determining predatory pricing under Georgia law (e.g., average variable costs, average total costs, or differing inferences raised by either). See McGahee v. Northern Propane Gas Co., 858 F.2d 1487, 1503-04 (11th Cir.1988), cert. denied, 490 U.S. 1084, 109 S.Ct. 2110, 104 L.Ed.2d 670 (1989)
 In addition, if the district court on remand finds a predatory pricing conspiracy and determines, as a matter of Georgia law, that a conspiracy in restraint of trade and a conspiracy to interfere with the business relationships of another constitute separate and distinct causes of action, then it will have to reach U.S. Anchor's intentional interference claim. See U.S. Anchor, 7 F.3d at 1003-04. In addressing this claim, the court will have to determine whether, as a matter of Georgia law, below cost pricing alone can constitute an inducement to third parties not to enter into or continue a business relationship. See Id. at 1003.