A91A1462. SAKAS et al. v. JESSEE et al.
A91A1463. BECKHAM et al. v. JESSEE et al.
(415 SE2d 670)

BIRDSONG, Presiding Judge.

Jeffrey L. Sakas and Walter H. Beckham appeal the grant of summary judgment to the defendant, their former law partner C. James Jessee, Jr., in a suit filed by them for accounting and a share of attorney fees earned by Jessee. The status of the parties as former law "partners" in their professional corporation was made an issue, so we use the word idiomatically here unless noted otherwise. Appellants contend they were entitled to share in the attorney fees earned in the

"trust abuse" class action case of Elizabeth R. Meyer v. The Citizens & Southern National Bank, it being one of several similar cases which the parties' former firm of Jessee, Ritchie and Duncan was attempting to put together as a class action under the general name of the "Fehskens litigation." The Fehskens case had been denied class action status in 1981, and this ruling was being appealed in 1982, when the firm dissolved and the partners entered a comprehensive "P.C. Shareholder Agreement." The agreement distributed responsibility among the partners for certain cases, files and matters, and provided for a pro rata distribution via a trustee of one-third of the fees received by the handling attorney in each such case, two-thirds of the fee of each such named case going to the handling attorney. The Agreement specifically provided that cases, files and matters not named on the members' lists would remain the property of Jessee. The particular assignment or distribution of the named cases among the five members was made subject to the client's approval in each case. This Agreement was executed by the partners on July 31, 1982.

In the "Schedule C List of Contingency Cases" appended to the Shareholder Agreement, Beckham was assigned Jacqueline Fehskens v. The Citizens and Southern National Bank, which was the trust abuse case. Beckham had spent thousands of hours since the late 1970s in investigation and legal work in connection with the Fehskens case and other trust abuse cases which the firm hoped to certify as a class action under Mrs. Fehskens' name. Jacqueline Fehskens v. The Citizens and Southern National Bank also appears as the last listed case under Jessee's name (although as noted below, it was apparently inserted by Jessee on Jessee's list unbeknownst to the other partners after they had seen and initialed the original draft "Schedule C" list of contingency cases).

Beckham contends Jessee concealed from the partners the referral of another trust abuse case against C & S Bank, the case of a Florida resident, Mrs. Elizabeth Meyer, so that the Meyer case could not be provided for in the July 31, 1982 Shareholders Agreement because of Jessee's concealment. Jessee contends he was referred the case in late May or early June, 1982, that all the partners were aware of it prior to July 31, 1982; and that because of its significance in giving diversity jurisdiction in federal court, the partners discussed the Meyer case at length prior to July 31, 1982. Sakas concedes in his brief that he knew of the referral of the Meyer case prior to his execution of the Shareholders Agreement, for he asserts that the Meyer case was "treated as a part of the Fehskens matter in the firm both before the July 31, 1982 division agreement and after." Beckham asserts Jessee does not contend he notified Ritchie or Duncan of the Meyer case and neither Jessee nor Sakas disclosed to Beckham the existence of the Meyer case prior to July 31, 1982. However, on Au-

gust 19, 1982, Beckham wrote a memo to Jessee entitled "RE: Jacqueline Fehskens vs. C & S National Bank" and stating "It appears that Mrs. Elizabeth Meyer is a potential class member in the Fehskens litigation. She can be advised that we are currently attempting to perfect an appeal of the class action matter in the Supreme Court of Georgia." In fact appellants point to this memo as proof that mention of the Fehskens litigation or the Fehskens case by the firm was intended to mean and include all the trust abuse cases which the firm hoped to certify as a class action under the name of Jacqueline Fehskens.

This litigation concerns the fees received in the Meyer case, which was settled in 1987 for $25,000,000, as to which Jessee reported his fee as $700,000; this being his share of the $7,000,000 shared by four firms. However, the dissatisfaction of the partners as parties to the Shareholders Agreement, particularly appellant Beckham, with the conduct surrounding the Agreement was aroused almost immediately after its execution on July 31, 1982. Beckham asserted to the trustee by at least December 1, 1982, that after he and the others had initialed the Agreement's "Schedule C" listing and assigning certain cases to the partners, Jessee had inserted onto the end of the list of cases assigned to him, the name of a case which was assigned to Beckham, Fehskens v. The Citizens and Southern National Bank. It appears that after Beckham complained to the trustee of Jessee's "despicable" fraudulent act of altering the list of cases to assign himself Beckham's Fehskens case (the trustee agreed this alteration should not be binding on the members), Jessee obtained an agreement from Mrs. Fehskens that he (Jessee), and not Beckham, should be the attorney handling her case, whereupon in accordance with terms of the Agreement, Beckham withdrew from the Fehskens case.

Appellants contend the listing of Jacqueline Fehskens v. The Citizens and Southern National Bank (which never became a class action case) was intended to, or did, include the spectrum of potential class-action cases, particularly the Meyer case, which did become a class action case in federal court and carried the Fehskens case as a member of the class. *Held*:

1. Construction of written contracts, even if they are ambiguous in some respect, is a matter for the court, and no jury question arises unless after application of applicable rules of construction the ambiguity remains (*Ogletree v. Jackson*, 184 Ga. App. 373, 374 (361 SE2d 535)), and no construction of the contract is required or even permissible when the language employed by the parties in the contract is plain, unambiguos and capable of only one reasonable interpretation. *Stone v. Palm Pool Prods.*, 198 Ga. App. 751, 752 (403 SE2d 69). We agree with the trial court that the pertinent terms of the Shareholders Agreement are clear and unambiguous and susceptible to only one

reasonable interpretation: that the listing of Jacqueline Fehskens v. The Citizens and Southern National Bank, referred only to the individual case involving Mrs. Fehskens, and did not include the realm of some 19-20 potential class action cases involving trust abuse against C & S Bank, and did not include the Meyer case. Inasmuch as the Agreement was constructed by appellants, who are experienced attorneys, and their own legal counsel, and was intended to comprehensively define, relegate and conclude all firm matters with certainty, it invites too much uncertainty as to a matter of too much now-claimed importance to the partners, to infer that in the minds of all the executing partners the simple description of one case involving one plaintiff, which had already been denied the status of a class action case, was intended to encompass a range of cases and potential cases which the partners had several years earlier, in a separate written agreement with Beckham to handle the cases, loosely called the Fehskens litigation.

The language in the P.C. Shareholders Agreement describing the Fehskens case is plain and subject to but one interpretation, and is not susceptible to being construed as representing other matters or cases that might have ultimately become part of the class action headed by another case. Examining all the circumstances surrounding the making of the Agreement (OCGA § 13-2-2 (1)), it must be assumed that the partners knew there were some 19 other "trust abuse" cases which they had hoped to consolidate in a Fehskens class action case; none of these was mentioned on the Schedule C list as being included in the mention of Fehskens v. C & S Bank. The fate of those other cases is not presented to this court, and we see no reason to infer that the mention of the Fehskens case included the Meyer case when it evidently is not claimed to have included the other 19 trust abuse cases then known to all partners to be held by the firm.

We conclude the contract must be interpreted according to its plain words. If a plain and certain provision in a contract might be thrown into question by the parties' assertion that they meant something else by it, no contract would be too uncertain to enforce. Whatever appellants might wish they had said in the Shareholders Agreement, they did not say it, and what they did say is unambiguous; it cannot be made ambiguous by the mere assertion that it was meant to include other matters which it did not mention. The contract provides plainly that it was the intent of the parties to settle and effect a resolution of all claims and disputes of every kind and nature among them regarding matters related to the pending litigation cases; that it is the entire agreement of the parties; and that they released and waived all claims against each other of any kind *"whether known or unknown,"* (emphasis supplied) up to the signing of the Agreement. No grounds at law or in the contract itself exist to

open this unambiguous contract to jury examination. As to the claim at issue, which is for accounting and allocation of one-third of Jessee's fee in the Meyer case and to appellants as pro rata share under the Shareholders Agreement, the award of summary judgment to Jessee and denial of summary judgments to appellants Beckham and Sakas based on interpretation of the contract is affirmed.

2. As to Beckham's claim that Jessee concealed the existence of the Meyer case from him prior to his execution of the Agreement, it is clear that since Beckham wrote Jessee a memo on August 19, 1982, concerning the inclusion of the Meyer case in the Fehskens class action, Beckham knew of the Meyer case at least as of that date. This, and the matter of Jessee's appropriation of the Fehskens case to his list of cases and Jessee's subsequent "solicitation" (as Beckham contends) of Mrs. Fehskens to let Jessee handle her case, are matters as to which appellant Beckham should have sought a reformation of the Agreement or other appropriate relief, at or near the time these things came to light. Whatever might have been the equities at that time, after the passage of five years the Meyer case assumed a very different form; as to this form the federal court, directly faced with the matter, held Beckham had had no role and was *in fact* not entitled to attorney fees. Whether Jessee had kept or taken the case fairly or unfairly, it was not appropriate for Beckham to keep silent about his interest for five years while the case wended through the courts, propelled by Jessee and others, and metamorphosed into a successful class action which reaped a bounty for the attorneys involved. What happened here was known to Beckham in August and December, 1982; he should not have waited to complain of it until Jessee and others pushed the case to a successful conclusion in 1987. In the facts of this particular case, the doctrine of laches takes effect with regard to any mitigation proposed by Beckham to the plain words of the Agreement, upon which Jessee, fairly or unfairly, in 1982 did take the Meyer case and the Fehskens case and by his labors turned them to a successful resolution five years later. See generally OCGA § 23-1-25; *Beaulieu &c. v. L. T. Dennard & Co.*, 253 Ga. 21 (315 SE2d 889). The same applies to Beckham's contention that Jessee, as partner, was in the position of agent to Beckham under OCGA § 14-8-9 (1), and that Jessee's fraudulent act of inserting the Fehskens case in the list of cases relegated to him after the members had agreed and initialed the Agreement should operate to deny him any fee.

The trial court did not err in dismissing Count II of Beckham's complaint (as to fraud) and committed no harmful error in finding that Beckham knew of the Meyer claim prior to July 31, 1982. We affirm the grant of summary judgment to Jessee and denial of summary judgment to Beckham and Sakas as to any interest in the Meyer case.

3. It appears the trial court failed to address appellants' entitlement to a one-third share of Jessee's fee as to the single case of Jacqueline Fehskens, which by virtue of being listed on the Schedule C list of contingency cases was subject to pro rata distribution among the former partners. Since there appears to be no genuine dispute that this case was subject to pro rata distribution of one-third of the fee in the Fehskens case among the former partners, this issue is excepted from the grant of summary judgment to Jessee and is remanded to the trial court for proper determination under the evidence and the issues raised.

*Judgments affirmed in part and reversed in part. Pope and Cooper, JJ., concur.*

DECIDED JANUARY 30, 1992 —
RECONSIDERATION DENIED FEBRUARY 17, 1992 — ▮▮▮▮▮

*Gambrell, Clarke, Anderson & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom,* for appellants (case no. A91A1462).

*Hendrick, Spanos & Phillips, Peter R. Spanos, Lori Ann Olejniczak,* for appellants (case no. A91A1463).

*C. James Jessee, Jr.,* pro se.