S94Q0409. U. S. ANCHOR MANUFACTURING, INC. v. RULE INDUSTRIES, INC. et al.
(443 SE2d 833)

CARLEY, Justice.

In November 1985, Rule Industries, Inc. (Rule) brought suit against U. S. Anchor Manufacturing, Inc. (U. S. Anchor), alleging infringement of certain trademarks and copyrights. On March 19, 1986, the parties executed a settlement agreement, providing, in part, that each party released the other

> from any and all actions, demands, claims or causes of action whatsoever, which now exist or which may arise in the future, as a result of events which occurred prior to the execution of [this] Settlement Agreement, including, without limitation, any claims which were or could have been presented by way of complaint or counterclaim in [the trademark action].

In November 1986, U. S. Anchor brought the instant suit in fed-

eral court against Rule and Tie Down Engineering, Inc. (Tie Down), alleging, among other things, that they violated federal law by attempting and conspiring to monopolize the U. S. market for light weight fluke-style anchors for small boats by means of below-cost pricing intended to drive out competition. U. S. Anchor also asserted state law claims. The trial court denied cross-motions for summary judgment. *U. S. Anchor Mfg. v. Rule Indus.*, 717 FSupp. 1565 (N.D. Ga. 1989). The trial court later granted Rule's and Tie Down's motions for directed verdict on the state law claims and entered judgment on the jury's verdict in favor of U. S. Anchor for the attempted monopolization and conspiracy counts. Rule and Tie Down appealed the denial of their motions for j.n.o.v. and new trial, and U. S. Anchor cross-appealed the directed verdict on its state law tort claims.

The United States Court of Appeals for the Eleventh Circuit reversed on the federal law claims, holding that there was no dangerous probability of success in any attempt to achieve monopoly power, *U. S. Anchor Mfg. v. Rule Indus.*, 7 F3d 986, 1001 (11th Cir. 1993), and that there was insufficient evidence to support a finding of conspiracy under federal law, which requires evidence excluding the possibility that the defendants acted independently or legitimately. *U. S. Anchor*, 7 F3d at 1002.

As to the state law claims, the U. S. Court of Appeals held that U. S. Anchor adequately raised tort claims for both conspiracy in restraint of trade and intentional interference with business relations. *U. S. Anchor*, 7 F3d at 1002-1003. The U. S. Court of Appeals declared that the

> novel questions presented are whether below-cost pricing can satisfy the improper action element of [intentional interference with business relations] and whether low prices, standing alone, can constitute a prohibited inducement of the plaintiff's customers. [Cit.]

*U. S. Anchor*, supra at 1003. Expressing "some doubt as to whether intentional interference with business relations is a distinct cause of action from the tort of conspiracy in restraint of trade," the U. S. Court of Appeals stated that, "while it appears settled that predatory pricing by a group or conspiracy is actionable, we have found no Georgia authority addressing predation by a single defendant acting unilaterally." *U. S. Anchor*, 7 F3d at 1004. The U. S. Court of Appeals retained pendent jurisdiction over the state law claims, but certified the following four questions of law to this court:

> 1. Does a general release under Georgia law discharge liability for injury caused by subsequent acts in the course of a

scheme or conspiracy that was ongoing at the time the release was executed but unknown to the releasing party?

2. Does a general release under Georgia law discharge liability for injury caused by tortious conduct already committed that was unknown to the releasing party at the time the release was executed?

3. Does the tort of intentional interference with business relations encompass predatory pricing below some measure of the defendant's costs?

4. If the answer to Question 3 is yes, then in a case of actionable predatory pricing below some measure of cost by a conspiracy or a single defendant, what is the appropriate measure of the defendant's costs?

*U. S. Anchor*, 7 F3d at 1005-1006.

1. The first question focuses on a conspiracy which continues beyond the execution of a general release and which causes injury, not by the continuing effect of pre-release acts, but rather by new post-release acts.

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. [Cit.] ' "Accurately speaking, *there is no such thing as a civil action for conspiracy*. There is an action for damages caused by acts pursuant to a formed conspiracy, but none for the conspiracy alone. While the crime of conspiracy may be committed without doing any overt act in pursuit of the combination, no civil liability is incurred for the conspiracy, but only for the overt acts of the conspirators." [Cit.] "Where civil liability for a conspiracy is sought to be imposed, the conspiracy of itself furnishes no cause of action. . . ." (Cits.)' [Cits.]" [Cit.]

(Emphasis in original.) *First Fed. Sav. Bank v. Hart*, 185 Ga. App. 304, 305 (2) (363 SE2d 832) (1987). See also *Brown & Allen v. Jacobs' Pharmacy Co.*, 115 Ga. 429, 433 (41 SE 553) (1902).

It follows that a document containing language which is construed to discharge liability for injury caused only by previously occurring acts does not, by its terms, discharge liability for injury caused by subsequent acts merely because those acts resulted from a previously existing scheme or conspiracy. See *Eatonton Oil &c. Co. v. Greene County*, 53 Ga. App. 145 (2) (185 SE 296) (1936). Compare *Lewis v. Schlenz*, 161 Ga. App. 222, 224 (1) (291 SE2d 55) (1982); *Ivey v. Ivey*, 234 Ga. 532 (1) (216 SE2d 827) (1975). Therefore, in answer to the first question, we hold that a general release under

Georgia law does not discharge liability for injury caused by subsequent acts in the course of a scheme or conspiracy that was ongoing at the time the release was executed.

2. The second question addresses tortious conduct which had already been committed, but which was unknown to the releasing party at the time a general release was executed.

A release is subject to the same rules of construction as govern ordinary contracts in writing. *Thomaston v. Fort Wayne Pools*, 181 Ga. App. 541 (1) (352 SE2d 794) (1987). Thus, "[a] release is to be construed according to the intent of the parties." *Central Ga. Power Co. v. Pope*, 144 Ga. 130, 134 (3) (1915).

Ordinarily, a general release does not discharge liability for injury caused by unknown tortious conduct which has already been committed. " '[A]lthough the terms of a release are general, their operation will be limited to those things within the contemplation of the parties at the time of its execution.' [Cits.]" *Hudson v. Hudson*, 220 Ga. 730, 734-735 (1) (141 SE2d 453) (1965). However, it is possible that a party may intend to discharge liability for injury caused by unknown tortious conduct. "Parties may execute an instrument which will release all claims of every character, although they may not have in special contemplation a particular claim or item of damages." *Central Ga. Power Co. v. Pope*, supra at 134. Nevertheless, an intention to release a party from liability for unknown conduct must be clearly expressed.

> [S]ince contracts must be construed according to the intention of the parties at the time of their execution it will not be presumed that parties intend to contract away their legal rights in regard to a subject matter not clearly appearing therein.

*Covington v. Brewer*, 101 Ga. App. 724, 729 (3) (115 SE2d 368) (1960). Here, the subject matter in question is unknown tortious conduct. Accordingly, in answer to the second question, we hold that, in order to discharge liability for already committed, but unknown tortious conduct, a general release must in some manner so specify. See, e.g., *Sakas v. Jessee*, 202 Ga. App. 838, 841 (1) (415 SE2d 670) (1992). Compare *Kennedy v. Bateman*, 217 Ga. 458, 460-461 (123 SE2d 656) (1961); *Aetna Cas. &c. Co. v. W. G. Lothridge Contracting Co.*, 163 Ga. App. 731 (296 SE2d 83) (1982) (wherein there was no indication that the claims were unknown at the time that the release was executed).

3. The third question concerns the viability of the tort of intentional interference with business relations for predatory pricing by a single defendant below some measure of that defendant's costs.

"The policy of the common law has always been in favor of free competition. . . . In the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may *cut rates or prices*, allow discounts or rebates, enter into secret negotiations behind the plaintiff's back, refuse to deal with him. . . ." [Cit.]

(Emphasis supplied.) *Parks v. Atlanta News Agency*, 115 Ga. App. 842, 845 (156 SE2d 137) (1967). See also *Southern Business Communications v. Matsushita Elec. Corp.*, 806 FSupp. 950, 962 (N.D. Ga. 1992); Prosser, The Law of Torts, pp. 954-955, § 130 (4th ed. 1971). *Parks* distinguished cases wherein "the wrong . . . arose from an unlawful combination, breach of contract, or inducement to another to breach a contract." *Parks v. Atlanta News Agency*, supra at 845.

*Strickland v. Ports Petroleum Co.*, 256 Ga. 669 (353 SE2d 17) (1987) held unconstitutional a statute forbidding the sale of octane or cetane fuels below cost where the potential effect of such below-cost sale would be substantially to lessen competition or tend to create a monopoly.

This court has repeatedly declared "that '[t]he right to contract, and for the seller and purchaser to agree upon a price, is a property right protected by the due-process clause of our Constitution, and unless it is a business "affected with a public interest," the General Assembly is without authority to abridge that right.' [Cits.]" [N]o matter what other states or the Supreme Court of the United States "may or may not have decided." [Cit.]

(Emphasis omitted.) *Strickland v. Ports Petroleum Co.*, supra at 670.

Accordingly, in answer to the third question, we hold that below-cost pricing by a single defendant is not improper in the absence of some other *unlawful* element and, thus, is not encompassed by the tort of intentional interference with business relations.

4. Because the third question is not answered in the affirmative, the fourth question need not be answered.

*Certified questions answered. All the Justices concur.*

DECIDED MAY 16, 1994 —
RECONSIDERATION DENIED JUNE 24, 1994.

*Porter & Doster, J. Alexander Porter, Simuel F. Doster, Jr., Sidney R. Barrett, Jr.,* for appellant.

*King & Spalding, Charles M. Shaffer, Jr., J. Kevin Buster, Sean*

*R. Smith, Webb & Daniel, Harold T. Daniel, Jr., Laurie Webb Daniel,* for appellees.