A96A1999. ORION CAPITAL PARTNERS, L. P. et al.
v. WESTINGHOUSE ELECTRIC CORPORATION et al.
(478 SE2d 382)

BIRDSONG, Presiding Judge.

Appellants/plaintiffs Orion Capital Partners, L. P. (Orion) and AFI Acquisition Corporation (AFI) appeal from the order of the superior court granting summary judgment to appellees/defendants Westinghouse Electric Corporation (Westinghouse) and Dog Food, Inc. This is a suit for breach of contract, fraud, legal fraud, negligent misrepresentation, unjust enrichment, constructive trust, mutual mistake, and fraudulent conveyance; appellants seek contract rescission and, as appropriate, damages due to the alleged unfair and deceptive business practices by Westinghouse and Allied Foods, Inc. (now known as Dog Foods, Inc. and hereinafter referred to as Old Allied) endemic to their sale of Old Allied to AFI. The complaint was filed on August 29, 1994.

Due to financial difficulties and an unsuccessful restructuring attempt of Old Allied, Westinghouse became the controlling shareholder of Old Allied. (Westinghouse became directly involved in this matter following the merger of Westinghouse's former subsidiary, Westinghouse Credit Corporation (WCC), as a business unit of Westinghouse. WCC had issued a $20 million loan to Old Allied. WCC purchased Old Allied's stock after the loan was in default.) AFI, a wholly owned subsidiary of Orion, purchased the pet food canning and manufacturing business and assets of Old Allied from Westinghouse. The purchase price paid by AFI was based on a multiple of Old Allied's earnings.

It was averred in the complaint that, unknown to Orion and AFI until after the sale, Old Allied was manufacturing and selling its pet food in violation of law. Old Allied was mislabeling its pet food and substituting cheaper ingredients than described on the product label; cat food cans did not contain the type of fish as labeled and dog food cans misrepresented that the product contained lamb and horse meat when it did not. (Appellee concedes that some of the pet food products were mislabeled, as some cans did not contain the ingredi-

ents described by the labels.)

A representative of the appellants who prepared the investment memorandum pertaining to Old Allied for the Orion Partners Investment Board testified by way of deposition that prior to the sale he had conversations with several representatives of Westinghouse and Old Allied. He asked questions relevant to his appraisal of Old Allied's business, and was told inter alia that Old Allied's inventory was salable in the normal course of business and Old Allied was not in violation of any laws. The managing director of appellant Orion testified by way of deposition that he and certain Orion employees had been shown misleading financial performance information, specifically regarding the "cost of goods sold of the product," and was told by an Old Allied representative that to the best of his knowledge Old Allied was in compliance with all laws. Further, the profit numbers given to him were misleading, as they represented profits of a business "based upon the assumption that business was being conducted lawfully, and we later learned it was not." The business was not being conducted lawfully in that certain of the products required by law to be in the pet food were not present.

Appellants contend inter alia that the undisclosed conduct of Old Allied artificially inflated Old Allied's earnings, as it would be more costly and would reduce Old Allied's earnings to use the products listed on the pet food labels; further, that inflation of earnings resulted in an inaccurate computation of the purchase price to be paid for Old Allied. Appellees contended before the trial court that, in accordance with the express terms of the asset purchase agreement (agreement), appellants purchased Old Allied's assets on an "as is, where is" basis; that appellants agreed to waive and release appellees from any claims arising from Old Allied's manufacturing operations in exchange for a reduced purchase price, and that any representations and warranties made in the agreement did not survive the closing.

The record discloses that appellants obtained a very attractive purchase price for Old Allied; the purchase price was to be calculated at approximately 5.1 times the earnings before interest and taxes, depreciation and amortization (EBIT) while normally investment banks were fixing a sales price for similar companies of approximately 6 to 6½ times the EBIT. Thus, the purchase price for Old Allied could be calculated at $3.7 million less than that normally demanded for a typical, similar company. It is unrefuted that appellants recognized they had been offered a favorable purchase price and by their conduct assented to an accelerated execution of the sale before the end of the year.

The sale was consummated on December 30, 1993 with the execution of the agreement; in January 1994, appellants discovered the

ingredients in pet food cans did not contain the products reflected on the labels. Subsequent review of Old Allied's business records confirmed that certain products listed on the labels of the cans had never been purchased. These records had been made available to appellants before the sale was consummated. The mislabeled products were relabeled to reflect their true contents. The pet food was then reformulated to bring the products in compliance with the law. On March 7, 1994, appellants issued a report to its credit facility provider, Creditanstalt, announcing it could reduce annual cost impact to $350,000 by the end of 1994. On April 18, 1994, at the Orion Partners quarterly investment meeting, it was reported that the annual cost impact could be reduced to $250,000. However, these goals were not obtained. As part of the cost reduction process, in October 1994, appellant Orion reduced the size of the larger dog food cans from 14 ounces to 13.2 ounces. At the same time, appellant Orion also invested in new plant equipment, such as new processing equipment in the FOG plants, a new freezer in the cat food plant, a new palletizer and case stacker, new electrical equipment, removal of underground storage tanks, and new personal computers. Orion spent $2 million in capital expenditures in 1994 and approximately $300,000 in capital expenditures from the beginning of 1995 to May 11, 1995. It was also reported at the quarterly investment meeting that Orion believed it was entitled to a purchase price adjustment of five times the cost incurred in putting the correct ingredients in the pet food cans that should have been there when Old Allied was purchased. Further, as late as May 11, 1995, Orion was planning to reduce their cat food cans from 6 ounces to 5.5 ounces; to prevent the further decline of sales, Orion was seeking new accounts to service, trying to improve product quality, trying to develop new products, and trying to control costs. *Held*:

1. The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843).

2. Before the trial court, appellees contended they were entitled to summary judgment "because the purchase of . . . Old Allied was done on an 'as is, where is' basis and because [appellants] waived and released [appellees] from any claims arising from past irregularities in the operations of the pet food business."

Appellants enumerate that the trial court erred in granting appellee-sellers' motion for summary judgment based upon the terms of the asset purchase agreement where appellant-buyers have stated

a claim for fraud in the inducement and rescission; the trial court erred in relying upon "as is, where is," and "waiver" language in the agreement to negate express representations also contained therein; and the trial court erred in granting summary judgment to Westinghouse, based upon the terms of the agreement, when Westinghouse was not a party thereto. Due to the conduct of appellants, as hereinafter discussed, and the express provisions of the asset purchase agreement, we find all of appellants' enumerations to be without merit.

(a) In view of our holding in subdivision (b) below, we do not here determine whether appellants justifiably relied on appellees' false representations when the documents which appellants used to establish their claim of false representations were made available to them during discovery, and when they received a recognized favorable purchase price formula (EBIT). Compare *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 298 (1) (427 SE2d 789).

(b) Examination of the asset purchase agreement and the summary judgment order reveals the trial court correctly construed the agreement and the effect of any applicable disclaimer, waiver, release, merger and "as is, where is" clauses therein contained. However, the question remains whether these agreement provisions remain binding and enforceable in view of the averment of a fraud in the inducement claim. As a general rule, "the question of reliance on the alleged fraudulent misrepresentation in tort cases cannot be determined by the provisions of the contract *sought to be rescinded* but must be determined as a question of fact by the jury. It is inconsistent to apply a disclaimer provision. of a contract in a tort action brought to determine whether the entire contract is invalid because of alleged prior fraud which induced the execution of the contract. If the contract is invalid because of the antecedent fraud, then the disclaimer provision therein is ineffectual since, in legal contemplation, there is no contract between the parties." (Emphasis supplied.) *City Dodge v. Gardner*, 232 Ga. 766, 770 (208 SE2d 794); see generally *Rivers v. BMW &c.*, 214 Ga. App. 880 (1) (449 SE2d 337); *Crews v. Cisco Bros. &c.*, 201 Ga. App. 589 (411 SE2d 518); but compare *McGuire v. Winkler*, 167 Ga. App. 104 (306 SE2d 70) (defense of fraud in the inducement). "If the party elects [timely] to rescind the contract as voidable, he is not bound by the provisions of the rescinded contract. [Cit.] If the defrauded party elects to affirm the contract and sue for damages for fraud and deceit he is bound by the contract provisions." *del Mazo v. Sanchez*, 186 Ga. App. 120, 125 (366 SE2d 333). "A contract may be rescinded at the instance of the party defrauded; but [as a well-established general rule] in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has

received by virtue of the contract if it is of any value." OCGA § 13-4-60; *Carpenter v. Curtis*, 196 Ga. App. 234, 236-237 (395 SE2d 653); *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883, 886 (354 SE2d 210). But a party need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, or when to do so would be unreasonable. See generally *Crews*, supra at 589-590 (1). In the case at bar, the attendant circumstances reveal no viable basis for excusing appellants from promptly effecting contract rescission within the meaning of OCGA § 13-4-60.

Examination of the record reveals uncontradicted evidence that following discovery of the alleged deceptive practices and misrepresentations, appellants engaged in a series of management decisions, as herein listed above, which can be construed only as an attempt to continue to operate Old Allied and to do so in a profitable manner. These actions are totally incompatible with contract rescission. Further, even accepting appellants' contentions that they sent a letter of rescission to appellees "by letter dated August 26, 1994," such a belated attempt (occurring approximately seven months after discovery of product substitution) is too late as a matter of law to constitute an effective rescission or reasonable offer to rescind the agreement. Compare *Meyers v. Hoops*, 140 NE2d 65 (C.A. Ohio 1955). Under the circumstances before us, appellants' reliance on *City Dodge*, supra and progeny is misplaced. Also substantially distinguishable are the holdings of this Court in *McNatt v. Colonial Pacific Leasing Corp.*, 221 Ga. App. 768 (472 SE2d 435) and *Bill Spreen Toyota v. Jenquin*, 163 Ga. App. 855 (294 SE2d 533) (where disclaimer of warranty was held to have no effect on the statement of the "subject matter of the sale"; id. at 857). Rather, in view of the lack of valid contract rescission or timely offer to rescind, we find most persuasive and controlling this Court's holding in *Tahoe-Vinings v. Vinings Partners*, 205 Ga. App. 829 (424 SE2d 30). By their unreasonable delay in electing their rescission remedy and by the terms of the agreement, appellants have released and waived their claims. *Tahoe*, supra; see also *del Mazo*, supra; compare *Meyers*, supra; cf. *Brown v. Ragsdale Motor Co.*, 65 Ga. App. 727, 731 (16 SE2d 176) (affirmance of contract by conduct; no effective rescission election made). Accordingly, the trial court correctly concluded that summary judgment be granted to appellees/defendants; "a grant of summary judgment must be affirmed if it is right for any reason." *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (3) (446 SE2d 741).

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED OCTOBER 29, 1996 —
RECONSIDERATION DENIED NOVEMBER 14, 1996 — 

*Alston & Bird, Jay D. Bennett, James C. Grant, Meredith E. Mays,* for appellants.

*Schreeder, Wheeler & Flint, David H. Flint, Alexander J. Simmons, Jr.,* for appellees.