United States Court of Appeals,

Eleventh Circuit.

Nos. 97-8899, 97-8914.

Warren KOBATAKE;  Pleasonton Corp., a Hawaii Corporation, et al., Plaintiffs-Appellants,

v.

E.I. DUPONT DE NEMOURS AND COMPANY;  Alston & Bird, A Georgia Partnership Including Professional Corporations, Defendants-Appellees.

Ellis W. LAY, Individually and d.b.a. Wintergreen Nurseries;  Prince Nurseries, Inc., a North Carolina corporation, et al., Plaintiffs-Appellants,

v.

E.I. DUPONT DE NEMOURS AND COMPANY, a Delaware corporation;  Alston & Bird, a Georgia Partnership, Defendants-Appellees.

Dec. 3, 1998.

Appeals from the United States District Court for the Northern District of Georgia. (Nos. 1:96-cv-2303-RCF, 1:96-cv-3417-RCF), Richard C. Freeman, Senior Judge.

Before TJOFLAT and DUBINA, Circuit Judges, and HILL, Senior Circuit Judge.

PER CURIAM:

The judgement in this case is affirmed for the reasons stated in the district court's thorough and well-reasoned order filed on July 18, 1997, and attached hereto as an appendix.

AFFIRMED.

APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

Ellis Lay, individually and d/b/a/ Wintergreen Nurseries; Prince Nurseries, Inc.; James Oliver Prince, Jr.; Lynn Hayes, individually and d/b/a/ Lynn's Nurseries; Thomas O. Mahaffey, Jr. Greenhouse, Inc.; Thomas O. Mahaffey Jr.; and George S. Ferguson, individually and d/b/a/ Scrub

Oak Foliage

v.

E.I. Dupont De Nemours and Company and Alston & Bird

Warren Kobatake, Pleasonton Corporation, Malcolm R. Saxby, and Puna Certified Nursery

v.

E.I. Dupont De Nemours and Company and Alston & Bird

Nos. 1:96-cv-2303-RCF, 1:96-cv-3417-RCF

*ORDER*

RICHARD C. FREEMAN, Senior District Judge:

These related actions are before the court on defendants' motions to dismiss the complaints in both litigations. The court addresses the actions together because defendants rely on the same legal theories in both cases to argue that the complaints do not state a claim upon which relief may be granted. In addition, plaintiffs rely on the same legal theories in both cases to counter defendants' argument.

## BACKGROUND

Plaintiffs are nursery owners whose plants were allegedly damaged by Benlate 50DF, a product manufactured by defendant E.I. DuPont de Nemours and Company [DuPont]. Approximately five years ago, plaintiffs filed several products liability lawsuits against DuPont to recover the money lost from the damage to their plants.[1] The Kobatake plaintiffs proceeded to trial against DuPont and, while the jury was deliberating, settled the case. At the same time, the Lay plaintiffs also settled their action against DuPont. Pursuant to the terms of the settlement agreements, plaintiffs executed general releases, all of which provide, in relevant part:

---

[1]Defendant Alston & Bird represented DuPont in the products liability litigation.

> [Plaintiff] hereby now and fully, finally and forever, releases and discharges DuPont, [and] its ... attorneys from any and all liability, claims, demands, damages or rights of action (hereinafter referred to as "claims") of any kind or character and of any nature whatsoever, whether known or unknown, fixed or contingent, arising from the beginning of time to the present, including but not limited to (1) any and all claims arising from or allegedly arising from or in any way related to [plaintiff's] use of Benlate or any Benomyl-containing fungicide; (2) any and all claims arising from or allegedly arising from or in any way related to Benlate or any Benomyl-containing fungicide or any constituents thereof, and (3) any and all claims which might have been alleged, or which were alleged, in the Civil Action.

*See, e.g.,* DuPont's Motion to Dismiss, Exhibit A. The releases also contain merger clauses, which provide that "[a]ll agreements and understandings between [plaintiff] and DuPont are embodied and expressed herein" and "[plaintiff] signs this Release as its own free act, without any promise, inducement, or representation not fully expressed herein." *Id.*

After settling with DuPont, plaintiffs discovered information that led them to believe that defendants acted improperly and fraudulently during the defense of the previous litigation by, *inter alia,* scheming to destroy harmful evidence and presenting perjured testimony. Plaintiffs subsequently filed these actions, alleging fraud, civil conspiracy, spoliation of evidence, violations of the Georgia Fair Business Practices Act, public nuisance, and racketeering. In addition, plaintiffs allege that they were fraudulently induced into settling the prior actions. Defendants seek dismissal of the pending actions on the grounds that the general releases prohibit plaintiffs from asserting their claims.[2]

**DISCUSSION**

**1. Collateral Estoppel**

---

[2]Because defendants' motions are brought under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted, the court accepts the facts as pleaded in the complaint and construes them in the light most favorable to the plaintiff. *Parr v. Woodmen of The World Life Insurance Co.,* 791 F.2d 888, 889-90 (11th Cir.1986). Thus, defendants can succeed with their motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103, 104 (11th Cir.1982).

The parties first dispute whether defendants are collaterally estopped from arguing that the general releases bar plaintiffs' actions for fraud. Plaintiffs contend that the doctrine of collateral estoppel applies because defendants argued and lost this same point in the district court that presided over the products liability actions. *See In re E.I. du Pont de Nemours and Co.,* 918 F.Supp. 1524, 1551 (M.D.Ga.1995), *rev'd,* 99 F.3d 363 (11th Cir.1996), *petition for cert. filed,* 65 U.S.L.W. 3767 (U.S. May 8, 1997) (No. 96-1777).[***] This contention is without merit. The district court, in a lengthy opinion, made numerous factual and legal conclusions, including the determination that the general releases did not prevent the court from hearing plaintiffs' motion for contempt. The court then found DuPont in contempt and fined it in excess of $6 million. DuPont appealed, and, after determining the threshold issue of whether the district court had jurisdiction over the contempt proceeding, the Eleventh Circuit reversed and remanded the action. *See In re E.I. DuPont De Nemours and Co.,* 99 F.3d 363 (11th Cir.1996). This reversal and remand for further proceedings negates any conclusive effect that the district court's judgment might have had, and thus the doctrine of collateral estoppel is not applicable here. *See, e.g., Jaffree v. Wallace,* 837 F.2d 1461, 1466 (11th Cir.1988) ("A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel."); 18 Wright, Miller, and Cooper, Federal Practice and Procedure § 4432 (1981) ("Reversal and remand for further proceedings on the entire case defeats preclusion entirely until a new final judgment is entered by the trial court or the initial judgment is restored by further appellate proceedings."). Accordingly, the court finds it appropriate to address defendants' argument that plaintiffs released all claims against them, including the claims that are raised in these actions.

**2. Releases**

---

[***]*cert. denied,* --- U.S. ----, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997).

As set forth above, plaintiffs discharged defendants from "any and all liability, claims, demands, damages or rights of action of any kind or character," "whether known or unknown," "arising from the beginning of time to the present," "including ... any and all claims arising from or in any way related to [plaintiffs'] use of Benlate" when they executed the releases in exchange for a substantial amount of money. At the same time, plaintiffs also agreed that the releases represented the parties' entire agreement and would be governed by Georgia law.[1]

Plaintiffs first argue that the releases do not encompass the claims alleged in the actions at bar. The court cannot agree. Under Georgia law, "[a] release or settlement agreement is a contract subject to construction by the court." *Darby v. Mathis,* 212 Ga.App. 444, 441 S.E.2d 905, 906 (Ga.App.1994). Nonetheless, "no construction of the contract is ... permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." *Sakas v. Jessee,* 202 Ga.App. 838, 415 S.E.2d 670 (Ga.App.1992). Here, the releases could not be more plain; plaintiffs gave up all rights to seek damages from defendants in connection with their use of DuPont's Benlate product and agreed that the release represented the parties' entire agreement.[2] When "[a] contract provides plainly that it was the intent of the parties

---

[1]The court declines plaintiffs' invitation to apply federal common law to the actions at bar. As stated by the Supreme Court, "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981). None of these areas is implicated here.

[2]Although plaintiffs explain that it was not their intention to release the claims alleged in these actions, the court is prohibited from taking this explanation into account where, as here, the releases are plain and unambiguous. *See, e.g., Leventhal v. Seiter,* 208 Ga.App. 158, 430 S.E.2d 378, 382 (Ga.App.1993) ("parol evidence is inadmissible to challenge the unambiguous terms of the contract"); *cf. Sakas,* 202 Ga.App. 838, 415 S.E.2d at 673 ("Whatever appellants might wish they had said in the [contract], they did not say it, and what they did say is unambiguous; it cannot be made ambiguous by the mere assertion that it was meant to include other matters

to settle and effect a resolution of all claims and disputes of every kind and nature among them ...; that it is the entire agreement of the parties; and that they released and waived all claims against each other of any kind whether known or unknown, ... [n]o grounds at law or in the contract itself exist to open [it] to jury examination." *Sakas,* 415 S.E.2d at 673. Thus, however egregiously defendants may have behaved during the prior litigation, plaintiffs' execution of such all-encompassing releases prohibits them from suing defendants for that behavior.[3]

However, because plaintiffs have alleged that they were fraudulently induced to execute the releases, the releases are voidable. *See, e.g., Gibbs v. Jefferson-Pilot Fire & Casualty Ins. Co.,* 178 Ga.App. 544, 343 S.E.2d 758, 759 (Ga.App.1986) ("Fraud in the procurement of a release will render it voidable."). In such a situation, plaintiffs have an election of remedies; they may (1) rescind the contract, thereby restoring to defendants the benefits they received as a result of the settlement, and sue in tort for damages resulting from the alleged fraud or (2) affirm the contract, thereby retaining the benefits received under the contract, and sue for damages. *See, e.g., Ben Farmer Realty Co. v. Woodard,* 212 Ga.App. 74, 441 S.E.2d 421, 422 (Ga.App.1994) (explaining that a party "claiming to have been fraudulently induced into entering a ... contract has an election of remedies involving rescission or affirmation of the contract"); *Carpenter v. Curtis,* 196 Ga.App.

_____

which it did not mention.").

[3]It is of no consequence that plaintiffs were unaware of defendants' allegedly fraudulent conduct at the time they executed the releases. In *U.S. Anchor Manufacturing, Inc. v. Rule Industries, Inc.,* 264 Ga. 295, 443 S.E.2d 833 (Ga.1994), the Georgia Supreme Court addressed the question of whether a general release discharges liability for injury caused by already committed tortious conduct that was unknown to the releasing party at the time the release was executed and determined that "a party may ... discharge liability for injury caused by unknown tortious conduct" when such intention is "clearly expressed." 264 Ga. 295, 443 S.E.2d at 835. As discussed above, the releases at issue here clearly express the parties' intentions to discharge liability for unknown conduct. Thus, plaintiffs may not avoid the unambiguous terms of the releases on the grounds that they were unaware of the facts forming the basis for their complaints in these actions.

234, 395 S.E.2d 653, 655 (Ga.App.1990) ("Two actions are available to one who was fraudulently induced by misrepresentations into entering a contract: he can affirm the contract and sue for breach or seek to rescind and sue in tort for fraud and deceit."). Of course, if a party elects to affirm the contract, he or she is bound by its provisions. *Orion Capital Partners, L.P. v. Westinghouse Electric Corp.,* 223 Ga.App. 539, 478 S.E.2d 382, 385 (Ga.App.1996). Rescission, on the other hand, relieves the party from any adverse consequences dictated by the terms of the contract. *Id.*

As mentioned previously, the releases at issue here contain merger clauses. Defendants, asserting that plaintiffs have affirmed the settlement agreements by retaining the money paid to them under those agreements, argue that the merger clauses prohibit plaintiffs from voiding the releases on the grounds that plaintiffs were fraudulently induced into executing them. Plaintiffs, on the other hand, contend that the merger clauses are without any force and effect because defendants breached a duty to disclose information that either would have prevented them from entering into the releases or would have enabled them to settle for a greater amount of money. In the alternative, plaintiffs argue that they are entitled to rescission of the releases.

**a. Affirmance**

Assuming first that plaintiffs have affirmed the releases,[4] the court agrees with defendants that the merger clauses prevent plaintiffs from voiding them on the basis of fraud. Where, as here, a contract contains an entire agreement clause, "that clause operates as a disclaimer, establishing that the written contract completely and comprehensively represents all of the parties' agreement" and thus "bars [plaintiffs] from asserting reliance on the alleged misrepresentation not contained within

---

[4]As will be explained below, the court finds that, having accepted and retained the money paid to them in exchange for the releases after having discovered the alleged fraud, plaintiffs have affirmed the releases.

the contract." *Pennington v. Braxley,* 224 Ga.App. 344, 480 S.E.2d 357, 359 (Ga.App.1997).[5] As explained by another court, "[t]his result obtains because where the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he has relied upon the other party's misrepresentation and his action for fraud must fail." *American Demolition, Inc. v. Hapeville Hotel Ltd. Partnership,* 202 Ga.App. 107, 413 S.E.2d 749, 751 (Ga.App.1991).

In these cases, plaintiffs seek to void the releases on the grounds that defendants did not disclose information relevant to plaintiffs' decision to settle their products liability claims. Plaintiffs did not, however, execute releases that contained a representation that they were relying on information provided to them by defendants. Instead, plaintiffs, with the aide of their attorneys, negotiated releases that specifically provided that they were executing the document "as [their] own free act, without any promise, inducement, or representation not fully expressed herein." Nothing in the releases indicates that plaintiffs were induced to settle by anything other than the settlement amount.

Attempting to avoid the plain language of the releases, plaintiffs argue that the merger clauses do not apply because defendants prevented them from exercising their own independent judgment when making the contract. Specifically, plaintiffs argue that defendants were obligated to inform them of the information that would have caused them to reevaluate the settlements. A similar argument was rejected by the Georgia Court of Appeals in the *American Demolition* case. There, the court determined that "[t]here was no evidence to suggest that this transaction was anything other than an arm's length transaction between two professionals and there is no evidence that any special or confidential relationship existed to give rise to a duty to disclose." 202 Ga.App.

---

[5]Reliance is, of course, an element essential to establishing fraud. *Id.*

107, 413 S.E.2d at 751-52. Similarly, plaintiffs here have not alleged that the transaction effectuating the settlement was not an arm's length transaction or that a relationship existed between them and defendants that would give rise to a duty to disclose. Indeed, the settlements were the product of the parties' attorneys' negotiations, which took place near the end of extremely contentious litigation.[6]

Because the releases contain valid merger clauses, and assuming the releases were affirmed, plaintiffs cannot void the releases on the basis that they were fraudulently induced into executing them.

**b. Rescission**

Plaintiffs, perhaps anticipating the court's conclusion that the merger clauses operate to bar their claims of fraudulent inducement, have argued in the alternative that the releases may be rescinded. As mentioned above, rescission relieves plaintiffs of the terms of the release. Thus, if the releases are rescinded, the merger clauses are without effect.

"A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." O.C.G.A. § 13-4-60. However, a party "need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, or when to do so would be

---

[6]Plaintiffs do assert that defendants were under a duty to disclose because a court order existed in the products liability action that directed them to produce the relevant information. The fact that defendants failed to meet a discovery obligation does not, however, give rise to an obligation to disclose that same information during the course of settlement negotiations. However inequitable a settlement may appear in hindsight, plaintiffs read and understood the language of the document they were signing and cannot now seek to renegotiate the terms of that document. *See, e.g., Driscoll v. Schuttler,* 697 F.Supp. 1195, 1203 (N.D.Ga.1988) ("Plaintiffs were not precluded from reading the releases; they understood that they were releasing their claims and exercised that option rather than gambling on the legal outcome of [their action].").

unreasonable." *Crews v. Cisco Brothers Ford-Mercury, Inc.,* 201 Ga.App. 589, 411 S.E.2d 518, 519 (Ga.App.1991). Because "[t]he tender rule is that neither party may retain an unfair advantage," courts are directed to take a "flexible and pragmatic approach ... toward the tender requirement." *Remediation Services, Inc. v. Georgia-Pacific Corp.,* 209 Ga.App. 427, 433 S.E.2d 631, 636 (Ga.App.1993). The ultimate goal is to return the parties "as nearly as possible to the *status quo ante.*" *Corbitt v. Harris,* 182 Ga.App. 81, 354 S.E.2d 637, 639 (Ga.App.1987).

Here, it is undisputed that plaintiffs have neither offered to return nor actually returned the money they received in consideration for the releases. Plaintiffs argue that they were not required to tender for two reasons: (1) because the amounts of money they received pursuant to settlement are less than the amounts to which they are entitled; and (2) because defendants concealed the alleged fraud until after the money plaintiff's received in settlement were spent. The court cannot agree. First, if the releases are rescinded and the parties are returned to their pre-settlement positions, plaintiffs are entitled to nothing. Second, the court finds, as a matter of law, that it is not defendants who have made restoration impossible. Although plaintiffs are not in a position to restore the money received in settlement,[7] the position in which plaintiffs find themselves is purely a result of discretionary decisions taken by them upon receipt of their settlement amounts.

Because plaintiffs cannot, as a matter of law, demonstrate that they are excepted from the requirement to restore the benefits received under the disputed contract, the court finds that they have affirmed the contract. This finding is in keeping with the general rule that "[a]ccepting and retaining the benefits under the contract alleged to be fraudulent after discovering the alleged fraud constitutes an affirmance." *Garcia v. Charles Evans BMW, Inc.,* 222 Ga.App. 121, 473 S.E.2d 588,

---

[7]Plaintiffs allege that the money was spent in an effort to contain the damages caused by DuPont's product.

589 (Ga.App.1996). *See also Leathers v. Robert Potamkin Cadillac Corp.,* 184 Ga.App. 430, 361 S.E.2d 845, 846 (Ga.App.1987) ("It is well established that one who, for a valuable consideration, including payment of money, has released another from all further liability, cannot obtain a rescission of such a contract of release ... without first restoring or offering to restore what the releasee paid for such release.").[8] And as explained above, affirmation of the contract leads to the ineluctable conclusion that the claims raised by plaintiffs in these actions are barred by the releases.

## CONCLUSION

Accordingly, for the reasons explained in the body of this Order, defendants' motions to dismiss [# 9-1, # 10-1, # 16-1 in Case No. 1:96-cv-2303-RCF and # 42-1 in Case No. 1:96-cv-3417-RCF] are GRANTED. The Clerk is DIRECTED to DISMISS these actions and CLOSE the FILES. The Clerk is also DIRECTED to TERMINATE all remaining motions in both actions.

SO ORDERED, this 17 day of July, 1997.

---

[8]The court notes that plaintiffs may not now seek to tender the money received in settlement. Georgia law requires that rescission be timely. Plaintiffs learned of the alleged fraud in 1994, nearly two years prior to commencing these actions. This delay is, as a matter of law, determinative. *See, e.g., Orion Capital Partners,* 223 Ga.App. 539, 478 S.E.2d at 385 (holding that seven-month delay "is too late as a matter of law to constitute an effective rescission or reasonable offer to rescind the agreement").