[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14589
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-03753-TWT

JEFFREY BULFORD,

Plaintiff - Appellant,

versus

VERIZON BUSINESS NETWORK SERVICES, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 25, 2014)

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Jeffrey Bulford appeals from the final order of the

district court dismissing his amended complaint alleging breach of contract and

fraud, arising out of the termination of Bulford's employment with Defendant-Appellee Verizon Business Network Services, Inc. ("Verizon"). On appeal, Bulford argues that the district court erred in dismissing both his fraud and breach-of-contract claims. After thorough review, we affirm.

We review <u>de novo</u> a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). <u>Mills v. Foremost Ins. Co.</u>, 511 F.3d 1300, 1303 (11th Cir. 2008). "[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." <u>Brooks v. Blue Cross & Blue Shield</u>, 116 F.3d 1364, 1368 (11th Cir. 1997). A contract attached as an exhibit to a pleading may be considered part of that pleading. <u>Homart Dev't Co. v. Sigman</u>, 868 F.2d 1556, 1562 (11th Cir. 1989).

The relevant facts are these. Verizon notified Bulford in December 2010 that his employment would be terminated, and sent Bulford a separation agreement, which set out his severance payment and released Verizon from any potential claims Bulford had to date. The separation agreement also contained a merger clause, which provided:

> This [separation agreement] is the entire agreement between the Company and me relating to my employment and my separation from employment, and my entitlement to any benefits relating to my employment and my separation from employment. No promises or representations have been made to me other than those in this Release. In deciding to sign this Release, I have not relied on any statement by anyone associated with Verizon that is not contained in this Release.

2

Prior to signing the separation agreement, Bulford, through counsel, exchanged several communications with Verizon regarding an accounting of any commissions Bulford may have earned in 2010. According to Bulford, in a January 14, 2011 letter, Verizon promised to pay him commission advances related to his November and December 2010 sales performance. Bulford signed the separation agreement -- without any modifications -- on January 21, 2011. After the separation agreement was executed, Bulford received the severance payment specified in the agreement, and he received two addition commission payments not called for by the agreement. No further payments were made.

Thereafter, Bulford filed this lawsuit, claiming that he is entitled to commissions amounting to at least $300,000. He says that Verizon's failure to pay this amount constitutes a breach of contract, and that he was fraudulently induced into signing the separation agreement by the representations made in the communications with his counsel. The district court dismissed his amended complaint for failure to state a claim, and this timely appeal follows.

First, we are unpersuaded by Bulford's argument that the district court erred in dismissing his fraud claim. Under Georgia law, the law that applies here, "[w]here a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract." Novare Group, Inc. v. Sarif, 718 S.E.2d 304, 309 (Ga. 2011); see

also Ekeledo v. Amporful, 642 S.E.2d 20, 22 (Ga. 2007) ("[W]here the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail.") (quotation omitted). Furthermore, "[j]ustifiable reliance is an essential element of . . . fraud . . . claims." Novare, 718 S.E.2d at 309. Thus, if a plaintiff is only alleging reliance on representations outside of a contract containing a merger clause, his "fraud . . . claims fail, even construing the pleadings most favorably" to him. Id.

In his fraud claim, Bulford claims that he relied on alleged false representations by Verizon regarding additional commission payments when he signed the separation agreement. However, the merger clause contained in the separation agreement forecloses Bulford's fraud claim under Georgia law. See Kobatake v. E.I. Dupont De Nemours & Co., 162 F.3d 619 (11th Cir. 1998). In Kobatake, the parties had settled prior litigation related to an allegedly defective product manufactured by the defendant. Id. at 623. As part of the settlement, the plaintiffs executed general releases of "any and all liability, claims, demands, damages or rights of action . . . of any kind or character and of any nature whatsoever, whether known or unknown, fixed or contingent, arising from the beginning of time to the present." Id. The general releases also contained merger clauses, which provided that "[a]ll agreements and understandings between [the

4

plaintiff] and [the defendant] are embodied and expressed herein." Id. The plaintiffs later filed new lawsuits alleging they were fraudulently induced into settling the prior claims and also brought various tort claims. Id. Applying Georgia law, we held that the general releases executed by the plaintiffs barred the claims they were bringing in the new lawsuit. Id.

This case is just like Kobatake. Like the plaintiffs there, Bulford executed a separation agreement that contained a general release of all claims he had or may have had against Verizon, and Bulford is now alleging that Verizon acted fraudulently in connection with the negotiations leading up to the execution of the separation agreement. As the panel in Kobatake noted, Bulford has two options: (1) he can rescind the contract, return to Verizon the benefits he received under the separation agreement, and sue in tort for damages; or (2) if he has affirmed the separation agreement by retaining the benefits he received under the agreement, he can sue for damages under the agreement. However, as for option one, Bulford cannot rescind the separation agreement because -- like the plaintiffs in Kobatake -- he has neither returned the benefits paid to him under the separation agreement nor timely offered to return the benefits. As for option two, Bulford cannot sue for damages under the separation agreement because -- again like the plaintiffs in Kobatake -- the merger clause in the separation agreement precludes Bulford from relying on any alleged misrepresentations not contained in the separation

5

agreement.  Further, just like the plaintiffs in Kobatake, Bulford was represented by counsel during the negotiations leading up to the execution of the separation agreement, and Bulford acknowledged that he "knowingly and voluntarily" executed the agreement.

We also reject Bulford's argument that the district court erred in dismissing his remaining claims.  In Georgia, "[a] release or settlement agreement is a contract subject to construction by the court."  Darby v. Mathis, 441 S.E.2d 905, 906 (Ga. App. 1994) (quotation omitted).  But, "no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation."  Id.  "When [a] contract provides plainly that it was the intent of the parties to settle and effect a resolution of all claims and disputes of every kind and nature among them . . . ; that it is the entire agreement of the parties; and that they released and waived all claims against each other of any kind whether known or unknown, . . . [n]o grounds at law or in the contract itself exist to open [it] to jury examination."  Kobatake, 162 F.3d at 624-25 (quoting Sakas v. Jessee, 415 S.E.2d 670, 673 (Ga. App. 1992)).  Here, as in Kobatake, Bulford's separation agreement contained an "all-encompassing release," under which Bulford agreed to "waive, release and forever give up any claim I may have against Verizon[.]"  This release language -- in addition to release language found in other provisions of the agreement -- barred

Bulford's remaining claims in this case for breach of contract, punitive damages, and attorneys' fees.

Moreover, to the extent Bulford argues that the January 14, 2011 letter from Verizon's counsel somehow became part of and incorporated into the separation agreement and that Verizon did not comply with the promises in that letter, we are unpersuaded. To begin with, the merger clause we've discussed above precludes this argument -- the separation agreement (executed by Bulford on January 21) superseded all prior negotiations between Verizon and Bulford (including the prior January 14 letter). What's more, there's no exception that would allow a court to look at parol evidence in this case, especially in light of the merger clause. See Choice Hotels Int'l, Inc. v. Ocmulgee Fields, Inc., 474 S.E.2d 56, 58 (Ga. App. 1996) ("Particularly when a contract contains a merger clause, parol evidence is inadmissible to challenge the unambiguous terms of the contract . . . ."). None of the cases Bulford cites -- many of which involve ambiguous language or do not involve merger clauses -- are relevant here.

Finally, we find no merit to Bulford's claim that Verizon waived its right to enforce the separation agreement by making commission payments to Bulford after the execution of the separation agreement. As the district court held, a waiver of part of the entitlement section of the separation agreement does not eliminate the effect of the merger clause. See Southwest Plaster & Co. v. R.S. Armstrong &

7

Bros. Co., 304 S.E.2d 500, 501 (1983) ("A mutual departure from one contract term, however, does not affect the enforceability of the other contractual provisions."). Further, Bulford has not alleged that Verizon waived the claim release provision. Whether Bulford was owed commissions and whether he may seek a judicial remedy for commissions owed are two separate issues. In short, Bulford has failed to explain how any commission payments Verizon paid to Bulford are relevant to the issue of the enforceability of the separation agreement.

**AFFIRMED.**